

# IN THE
# TENTH COURT OF APPEALS

### No. 10-12-00029-CV

## IN THE INTEREST OF A.M. AND E.M., CHILDREN

### From the 74th District Court
### McLennan County, Texas
### Trial Court No. 2010-2778-3

## O P I N I O N

Appellant J.M. appeals the trial court's order terminating her parental rights to her daughters A.M. and E.M.[1]  We will affirm.

In a proceeding to terminate the parent-child relationship brought under section 161.001 of the Family Code, the Department of Family and Protective Services must establish by clear and convincing evidence two elements:  (1) one or more acts or omissions enumerated under subsection (1) of section 161.001, termed a predicate violation; *and* (2) that termination is in the best interest of the child.  TEX. FAM. CODE ANN. § 161.001(1), (2) (West Supp. 2011); *Swate v. Swate*, 72 S.W.3d 763, 766 (Tex. App.—Waco 2002, pet. denied).  The factfinder must find that both elements are established by

---

[1] The parental rights of the children's father were terminated upon his voluntary relinquishment of his parental rights.

clear and convincing evidence, and proof of one element does not relieve the petitioner of the burden of proving the other. *Holley v. Adams*, 544 S.W.2d 367, 370 (Tex. 1976); *Swate*, 72 S.W.3d at 766. Due process requires the petitioner to justify termination of parental rights by "clear and convincing evidence." *Spangler v. Texas Dept. of Prot. & Reg. Servs.*, 962 S.W.2d 253, 256 (Tex. App.—Waco 1998, no pet.). This standard is defined as "that measure or degree of proof which will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id.*

The jury found, and the trial court ordered termination on, the following predicate violations under Family Code section 161.001(1): subsection (D) (knowingly placed or knowingly allowed the children to remain in conditions or surroundings that endangered the children's physical or emotional well-being); subsection (E) (engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered the children's physical or emotional well-being); and subsection (O) (failed to comply with provisions of court order specifically establishing actions necessary for parent to obtain return of children). *See* TEX. FAM. CODE ANN. § 161.001(1)(D, E, O).

The jury also found that termination of Appellant's parental rights to A.M. and E.M. was in their best interest. In her sole issue, Appellant asserts that the evidence is factually insufficient to support the jury's best-interest findings.

**Preservation**

We initially address the Department's assertion that Appellant's factual-sufficiency complaint is not preserved because she did not file a motion for new trial

asserting factual insufficiency. *See* TEX. R. CIV. P. 324(b)(2). Our precedent is that, in termination cases, we may review a factual-sufficiency complaint on core issues (predicate violation or best interest) even though it was not preserved in the trial court. *See In re A.P.,* 42 S.W.3d 248, 254-56 (Tex. App.—Waco 2001, no pet.), *disapproved on other grounds by In re J.F.C.,* 96 S.W.3d 256, 267 n.39 (Tex. 2002); *see also In re T.N.F.,* 205 S.W.3d 625, 630 n.2 (Tex. App.—Waco 2006, pet. denied) (following *A.P.*).

The Department suggests that, in light of the Texas Supreme Court's decision in *In re B.L.D.,* 113 S.W.3d 340 (Tex. 2003), we should overrule our precedent and require a motion for new trial to preserve a factual-sufficiency issue for appellate review.[2] In *B.L.D.,* the court held that jury-charge preservation rules comport with due process in termination appeals. *Id.* at 354; *see also In re J.F.C.,* 96 S.W.3d 256, 274 (Tex. 2002) (holding that Rule of Civil Procedure 279 does not deprive parents of due process in termination appeals). The court has not directly addressed whether the factual-sufficiency preservation requirement comports with due process in termination cases, though it has viewed the preservation requirement through the prism of an ineffective-assistance claim. *See In re M.S.,* 115 S.W.3d 534, 546-50 (Tex. 2003). The court concluded that

> the State's initial interest in maintaining the familial bond versus its
> interest in maintaining procedural integrity weighs in favor of permitting

---

[2] The Department also points out that at least four other appellate courts have held that a motion for new trial is required in termination cases to preserve a factual-sufficiency issue for appellate review. *See In re A.J.L.,* 136 S.W.3d 293, 301-02 (Tex. App.—Fort Worth 2004, no pet.); *In re M.S.,* 73 S.W.3d 537, 541-42 (Tex. App.—Beaumont 2002), *rev'd on other grounds,* 115 S.W.3d 534 (Tex. 2003); *In re I.V.,* 61 S.W.3d 789, 794 (Tex. App.—Corpus Christi 2001, no pet.), *disapproved on other grounds by In re J.F.C.,* 96 S.W.3d 256, 267 n.39 (Tex. 2002); *In re J.M.S.,* 43 S.W.3d 60, 62 (Tex. App.—Houston [1st Dist.] 2001, no pet).

a factual sufficiency review when counsel unjustifiably fails to follow those procedures.

…

That a motion for new trial is required for appellate review of a factual sufficiency issue is something that competent trial counsel in Texas should know. And filing such a motion is not a difficult task. But though a just and accurate result cannot ever be absolutely guaranteed, we cannot think of a more serious risk of erroneous deprivation of parental rights than when the evidence, though minimally existing, fails to clearly and convincingly establish in favor of jury findings that parental rights should be terminated. Thus, if counsel's failure to preserve a factual sufficiency complaint is unjustified, then counsel's incompetency in failing to preserve the complaint raises the risk of erroneous deprivation too high, and our procedural rule governing factual sufficiency preservation must give way to constitutional due process considerations.

We do not hold here that every failure to preserve factual sufficiency issues rises to the level of ineffective assistance. Rather, our appellate courts must engage in a review using the established *Strickland* standards.

*Id.* at 549.[3]

*M.S.* was decided after our decision in *A.P.*, and it appears to us that, in *M.S.*, the supreme court implicitly declined to dispense with the factual-sufficiency preservation requirement in termination cases. We therefore overrule *A.P.* (and *T.N.F.*) and hold that in termination cases, to raise a factual-sufficiency complaint on appeal, it must be

---

[3] In *B.L.D.*, the court commented:

Assuming that this fact-specific due process analysis under *Lassiter* controls the evaluation of our preservation rules, we acknowledge that in a given parental rights termination case, a different calibration of the *Eldridge* factors could require a court of appeals to review an unpreserved complaint of error to ensure that our procedures comport with due process. In fact, today in *In re M.S.*, we hold that if appointed counsel unjustifiably fails to preserve a sufficiency challenge for appellate review, under some circumstances that failure could amount to a due process violation. *In re M.S.*, 115 S.W.3d 534, 548 (Tex. 2003).

*B.L.D.*, 113 S.W.3d at 354.

preserved by including it in a motion for new trial.

We next turn to Appellant's assertion that, by overruling *A.P.* (and *T.N.F.*), we should apply that ruling prospectively. Court "decisions usually apply retrospectively, [but] exceptions are recognized when considerations of fairness and policy dictate prospective effect only." *Elbaor v. Smith*, 845 S.W.2d 240, 250 (Tex. 1992). We view three factors to determine whether to apply a decision prospectively or retroactively:

> (1) whether the decision establishes a new principle of law by either overruling clear past precedent on which litigants may have relied or by deciding an issue of first impression whose resolution was not clearly foreshadowed; (2) whether prospective or retroactive application of the particular rule will further or retard its operation through an examination of the history, purpose, and effect of the rule; and (3) whether retroactive application of the rule could produce substantial inequitable results.

*Id.* (citing *Chevron Oil Co. v. Huson*, 404 U.S. 97, 106-07, 92 S.Ct. 349, 355-56, 30 L.Ed.2d 296 (1971), and *Carrollton Farmers Branch ISD v. Edgewood ISD*, 826 S.W.2d 489, 518-19 (Tex. 1992)).

We agree with Appellant's assertion that the first and third factors weigh in favor of a prospective application. We are overruling "clear past precedent" on which Appellant could have relied in the trial court. And if the evidence in this case were factually insufficient to support the jury's best-interest findings, retroactive application of our decision would produce a "substantial inequitable result," especially given the constitutional magnitude attached to the parent-child relationship.[4] *See M.S.*, 115

---

[4] The natural right that exists between parents and their children is one of constitutional dimension. *In re J.W.T.*, 872 S.W.2d 189, 194-95 (Tex. 1994). A parent's right to "the companionship, care, custody and management" of her children is a constitutional interest "far more precious than any property right." *Santosky v. Kramer*, 455 U.S. 745, 758-59, 102 S.Ct. 1388, 1397, 71 L.Ed.2d 599 (1982) (quoting *Stanley v. Illinois*, 405 U.S. 645, 651, 92 S.Ct. 1208, 1212, 31 L.Ed.2d 551 (1972)).

S.W.3d at 549 ("though a just and accurate result cannot ever be absolutely guaranteed, we cannot think of a more serious risk of erroneous deprivation of parental rights than when the evidence, though minimally existing, fails to clearly and convincingly establish in favor of jury findings that parental rights should be terminated").

Accordingly, our decision today will apply prospectively, and we will review Appellant's complaint that the evidence is not factually sufficient to support the jury's best-interest findings.

**Sufficiency**

The standard of review for factual sufficiency in termination cases is well-established. *See In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002). In a factual sufficiency review, a court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing. *Id.*

> [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*J.F.C.*, 96 S.W.3d at 266-67 (footnotes and citations omitted); *see C.H.*, 89 S.W.3d at 25. We view the evidence in a neutral light when reviewing for factual sufficiency.

In determining the best interest of a child, a number of factors have been considered, including (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child

now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals; (6) the plans for the child by these individuals; (7) the stability of the home; (8) the acts or omissions of the parent that may indicate the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent. *Holley*, 544 S.W.2d at 371-72. This list is not exhaustive, but simply indicates factors that have been or could be pertinent. *Id.* The *Holley* factors focus on the best interest of the child, not the best interest of the parent. *Dupree v. Tex. Dep't Prot. & Reg. Serv's.*, 907 S.W.2d 81, 86 (Tex. App.—Dallas 1995, no writ). The goal of establishing a stable permanent home for a child is a compelling state interest. *Id.* at 87.

Appellant contends that, in our factual-sufficiency review of the evidence on the best-interest findings, we should not include in our review the evidence of Appellant's predicate violations and should only review evidence pertaining to her post-removal conduct.[5] Appellant argues that if we consider the evidence that was relied on to establish Appellant's predicate violations in reviewing the best-interest findings, the separate statutory best-interest requirement is meaningless.

We are required to review the sufficiency of the evidence to support the jury's answer based on the charge given and the jury findings in response to that charge. *See*

---

[5] The supreme court has stated: "While it is true that proof of acts or omissions under section 161.001(1) does not relieve the petitioner from proving the best interest of the child, the same evidence may be probative of both issues." *C.H.*, 89 S.W.3d at 28; *see In re W.E.C.*, 110 S.W.3d 231, 240 (Tex. App.—Fort Worth 2003, no pet.) (best interest of child is often infused with statutory offensive behavior); *see also Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied) (evidence of past misconduct or neglect can be used to measure parent's future conduct; *Ray v. Burns,* 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue.").

*Barker v. Eckman*, 213 S.W.3d 306, 313 (Tex. 2006); *Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000). In conducting this review, we presume that the jury acted in accordance with the trial court's instructions. *Barker*, 213 S.W.3d at 313.

When evidence of Appellant's predicate violations was offered during trial, Appellant made no request for the jury to be instructed that the evidence be admitted for the limited purpose of the predicate violations. *See* TEX. R. EVID. 105(a) ("When evidence which is admissible … for one purpose but not admissible … for another purpose is admitted, the court, upon request, shall restrict the evidence to its proper scope and instruct the jury accordingly; …"). Nor did Appellant object to the jury charge in this respect; the jury was not instructed to disregard the evidence of Appellant's predicate violations in answering the best-interest questions. *See* TEX. R. CIV. P. 274; *B.L.D.,* 113 S.W.3d at 349-50; *see also Barker*, 213 S.W.3d at 313 (requiring review of sufficiency of evidence based on charge and jury findings in charge). Appellant has thus not preserved for appellate review her complaint about the evidence of Appellant's predicate violations being used in the best-interest review. *See* TEX. R. APP. P. 33.1(a); *cf.* TEX. R. EVID. 105(a) ("in the absence of such request the court's action in admitting such evidence without limitation shall not be a ground for complaint on appeal").

The evidence shows that in August 2010, A.M. was age five and E.M. was about to turn three. Police went to the home in the evening in response to a child-neglect call from a neighbor; the children had been seen banging on their bedroom window and screaming. Police found the house filthy (full of trash, leftover and rotting food, dirty

clothes, rodents, and rodent droppings) and extremely hot.[6] The electricity had been turned off, but Appellant had an extension cord running from the neighbor's house. Inside the house were several extension cords and surge protectors, which the police officer thought was unsafe for the young children. The only light on was a makeshift one in the children's bedroom. Appellant told police that she had locked the children in their bedroom because they had thrown a tantrum and would not go to bed.

The Department was called, and a CPS investigator found the home unsafe for the children. A.M. reported that the house had been in this condition for three to four weeks. The children were removed and were placed for a time with Appellant's parents, in foster care, and ultimately with their great aunt and uncle. Appellant was arrested and jailed for several months, pleading guilty to child endangerment and being placed on community supervision. Thereafter, Appellant stayed with her brother, was homeless for a while, and ultimately moved to Fort Worth and got a job and an apartment, which was found to be clean and proper for the children. Appellant again completed required services, and her supervised visits with the children were appropriate.

While doing her services, Appellant failed to inform the Department that she had unsupervised contact with the children and admitted that she had lied about it in a hearing. Appellant told the children not to tell the Department about this contact, and as a result of this pressure, A.M. developed an incontinence problem. Appellant also

---

[6] In 2008 Appellant had been investigated by the Department for a filthy house and had received and completed required services, including parenting classes and individual therapy.

did not inform the Department that her parents had substance-abuse issues and that she had gotten into a serious relationship with a state prison inmate (Donnie) whom she had a relationship with in high school.

Donnie was in prison for the offense of attempted sexual assault (of a prostitute) and had been on community supervision for drug possession. Appellant communicated with Donnie in prison by email, visited him in prison, and sent him money monthly while barely making ends meet and not paying her community-supervision fees. Both her family-service plan and community supervision prohibited her from associating with criminals. Appellant was in danger of having her community supervision revoked. Appellant and Donnie have discussed marriage when he is released, and if he proves himself, he would live with her and the children.

At the time of trial, the children had been with the great aunt and uncle for three weeks, and they ultimately would like to adopt the children.

We now review the evidence and consider the best-interest factors.

*Desires of the children:* At the time of trial, A.M. was nearly age seven and E.M. was age four. Neither child testified at trial. In visits the children had asked when they would go "home," and it is not disputed that they loved Appellant. A.M. told Appellant that she wanted things to be different than they were before, and A.M. wanted stability. The children called their foster parents and their great aunt and uncle "mommy" and "daddy," and at the time of trial asked to see their grandmother more than they asked to see Appellant.

Evidence that a child loves a parent, enjoys visits, and shows affection is

marginally relevant. *In re M.H.*, 319 S.W.3d 137, 150 (Tex. App.—Waco 2010, no pet.). And absent a showing of sufficient maturity, a child's preference is not considered. *See id.; see also In re A.R.*, 236 S.W.3d 460, 480 (Tex. App.—Dallas 2007, no pet.). In any event, the evidence on this factor neither weighs in favor of or against the best-interest findings.

*The children's emotional and physical needs now and in the future and the emotional and physical danger to the children:* Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *See Williams v. Williams*, 150 S.W.3d 436, 451 (Tex. App.—Austin 2004, pet. denied); *Ray v. Burns*, 832 S.W.2d 431, 435 (Tex. App.—Waco 1992, no writ) ("Past is often prologue."); *see also In re V.A.*, No. 13-06-00237-CV, 2007 WL 293023, at *5-6 (Tex. App.—Corpus Christi 2007, no pet.) (mem. op.) (considering parent's past history of unstable housing, unstable employment, unstable relationships, and drug usage).

The evidence shows that Appellant has a history of neglecting and endangering the children, of exposing them to domestic violence (between Appellant and the children's father), and of unstable housing, employment, and relationships. Her future plans include a life with Donnie, a convicted felon. At the time of trial, Appellant was subject to having her community supervision revoked and being incarcerated. *See, e.g., Karl v. Tex. Dept. Prot. & Reg. Serv's.*, No. 03-03-00655-CV, 2004 WL 1573162, at *2-3 (Tex. App.—Austin July 15, 2004, no pet.) (mem. op.) (engaging in criminal conduct endangers emotional well-being of child because of parent's resulting incarceration); *see also In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied) ("conduct

that subjects a child to a life of uncertainty and instability endangers the physical and emotional well-being of a child").

The evidence on these factors, including the statutory offensive behavior, weighs in favor of the best-interest findings.

*Parental abilities and available programs:* The evidence shows that Appellant had been educated in child development and had worked as a teacher's aide in Head Start. Despite that and despite having been through Department services (including parenting classes) in 2008, Appellant's home was again found filthy and unsafe in 2010. After the children were removed, Appellant again completed Department services. At the time of trial, Appellant had a clean apartment and, if she were to obtain possession of the children, would be eligible for food stamps. She had also looked into daycare.

The great aunt and uncle have raised several children and are family-oriented. The great aunt has a history of depression but has been fine and had not had treatment since 2005. Upon termination, the Department would continue to provide services to the children.

Evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *In re T.C.*, No. 10-10-00207-CV, 2010 WL 4983512, at *8 (Tex. App.—Waco Dec. 1, 2010, pet. denied) (mem. op.) (citing *In re J.O.A.*, 283 S.W.3d 336, 346 (Tex. 2009)); *Smith v. Tex. Dep't Prot. & Reg. Serv's.*, 160 S.W.3d 673, 681 (Tex. App.—Austin 2005, no pet.). The evidence on these factors weighs in favor of the best-interest findings.

*Plans for the children and stability of the home:* The need for permanence is a

paramount consideration for a child's present and future physical and emotional needs. *In re S.H.A.,* 728 S.W.2d 73, 92 (Tex. App.—Dallas 1987, writ ref'd n.r.e.) (en banc). The goal of establishing a stable permanent home for a child is a compelling state interest. *Dupree,* 907 S.W.2d at 87.

Appellant planned on continuing the children with their therapy and changing how she had previously parented. The jury, as the finder of fact, was free to reject Appellant's assertions of future stability and of having learned from her mistakes. *See In re B.S.W.,* No. 14-04-00496-CV, 2004 WL 2964015, at *9 (Tex. App.—Houston [14th Dist.] Dec. 23, 2004, no pet.) (mem. op.) ("Ms. Woods has failed to show that she is stable enough to parent B.S.W. for any prolonged period. The trial court was entitled to determine that this pattern would likely continue and that permanency could only be achieved through termination and adoption."). She also planned a life for her and her children with Donnie, a convicted felon, if he proved himself when he was released from prison.

The great aunt and uncle have been in their current home for over four years. They want to adopt the children and end their instability. After potential adoptive parents are identified by the Department, the children must live with them for six months before adoption, and a caseworker would continue to work with them.

The evidence on these factors weighs in favor of the best-interest findings.

*Acts or omissions and any excuses for them:* Appellant admitted that she neglected and endangered the children. She blamed it in part on her poor health.

The evidence on these factors weighs in favor of the best-interest findings.

In conclusion, on the jury's findings that termination of Appellant's parent-child relationships with A.M. and E.M. would be in their best interest, considering all the evidence in a neutral light in relation to the *Holley* factors, we hold that the jury could have reasonably formed a firm belief or conviction that termination was in the children's best interest. Accordingly, the evidence is factually sufficient on the best-interest findings.

We overrule Appellant's sole issue and affirm the trial court's order of termination.

REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
      (Chief Justice Gray concurs)
Affirmed
Opinion delivered and filed August 9, 2012
[CV06]