

# IN THE
# TENTH COURT OF APPEALS

_____

## No. 10-12-00462-CV

## IN THE INTEREST OF F.F., M.N., I.N., AND G.N., CHILDREN

_____

### From the 249th District Court
### Johnson County, Texas
### Trial Court No. D201105469

## MEMORANDUM OPINION

Frank N. and Brandy F. are the parents of F.F., M.N, I.N., and G.N.[1]  After a jury trial, the trial court entered a judgment terminating the parental rights of Frank to F.F., M.N., I.N., and G.N., and terminating the parental rights of Brandy to M.N., I.N., and G.N.  The jury found by clear and convincing evidence that one or more of the alleged grounds for termination was established and that termination was in the best interest of the children.  We affirm the trial court's judgment terminating the parental rights of Frank to all four children and terminating the parental rights of Brandy to M.N., I.N., and G.N.

---

[1] Frank and Brandy had a fifth child after their four children were removed by the Department.  That child was not a part of these proceedings.

**Judgment on Termination**

In terminating Brandy's parental rights[2] to M.N. and I.N., the jury found by clear and convincing evidence that Brandy:

- Engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012).

- Failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the child. TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2012).

- Termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012).

In terminating Brandy's parental rights to G.N, the jury found by clear and convincing evidence that Brandy:

- Knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2012).

- Engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012).

- Failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the child. TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2012).

- Has a mental or emotional illness or a mental deficiency that renders her unable to provide for the physical, emotional, and mental needs of the child. TEX. FAM. CODE ANN. § 161.003 (West 2008).

- Termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012).

---

[2] The jury found that termination of Brandy's rights to F.F. was not in the child's best interest.

In terminating Frank's parental rights to F.F., M.N., and I.N., the jury found by clear and convincing evidence that Frank:

- Knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2012).

- Failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the child. TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2012).

- Has a mental or emotional illness or a mental deficiency that renders him unable to provide for the physical, emotional, and mental needs of the child. TEX. FAM. CODE ANN. § 161.003 (West 2008).

- Termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012).

In terminating Frank's parental rights to G.N, the jury found by clear and convincing evidence that Frank:

- Knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(D) (West Supp. 2012).

- Engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child. TEX. FAM. CODE ANN. § 161.001(1)(E) (West Supp. 2012).

- Failed to comply with the provisions of a court order that specifically established the actions necessary to obtain the return of the child. TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2012).

- Has a mental or emotional illness or a mental deficiency that renders him unable to provide for the physical, emotional, and mental needs of the child. TEX. FAM. CODE ANN. § 161.003 (West 2008).

- Termination was in the best interest of the child. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012).

Frank argues 31 issues on appeal, and Brandy argues 20 issues on appeal. We begin by addressing the challenges to the sufficiency of the evidence.

## Sufficiency of Evidence

In issues numbers one through eighteen, Brandy challenges the legal and factual sufficiency of the evidence to support the findings. In issues numbers one through twenty-one, Frank challenges the legal and factual sufficiency of the evidence to support the findings.

### Background Facts

The Texas Department of Family and Protective Services initially investigated the family in November 2010 for the medical neglect of G.N. and the emotional abuse and physical neglect of F.F., M.N., and I.N. Dr. Laurie Gray, a pediatrician at Cook Children's in Mansfield, testified that she received a referral for G.N. from a local hospital. Dr. Gray stated that G.N. had several abnormalities including microtia of the ear, plagiocephaly (abnormal head shape), torticollis (turning of his neck and head to one side), and hypospadias (an abnormality of the penis). Dr. Gray made referrals for G.N. to see other doctors and therapists for the conditions. Dr. Gray explained that all of G.N.'s conditions had treatments and that it was necessary for him to receive treatment. Dr. Gray became concerned when Frank and Brandy failed to schedule appointments for G.N. and failed to take him to scheduled appointments. There was considerable testimony at trial that Frank and Brandy did not take G.N. to his needed physical therapy appointments and did not schedule appointments with specialists.

Dr. Gray also testified that she had concerns about M.N. and I.N. Both children were behind on their immunizations, I.N. had problems with language development, and M.N. had behavioral problems and had trouble with developmental milestones. The Department began services with the family.

Frank and Brandy lived with Frank's parents. There were a total of eleven people living in the home. Frank, Brandy, and all four children slept in the living room of the home, and I.N. and G.N. slept in car seats. Ninfa Torres, with the Texas Department of Family and Protective Services, testified that after investigating the November 2010 referral, the family was requested to complete services. The Department requested that Frank and Brandy attend parenting classes, obtain their own housing, obtain employment, and take the children to doctor's appointments. After the Department became involved with the family, I.N. and G.N. began sleeping in "Pack 'N Play" beds. There was evidence that there were roaches in the "Pack 'N Play" bed with G.N. There were other safety hazards including too many blankets, toys, and bottles in the "Pack 'N Play" beds. Frank and Brandy continued to miss scheduled therapy and doctor's appointments for G.N. The children were eventually removed from Frank and Brandy.

Abiola Olagbami, with the Texas Department of Family and Protective Services, testified that the Department developed a service plan for Frank and Brandy after the children were removed. The service plan required that Frank and Brandy: 1) be at all scheduled doctor's appointments for G.N. that are not in the home of the foster parents; 2) attend and participate in counseling; 3) have legal and sufficient income to be able to

provide for the basic needs of the children and provide the Department with pay stubs monthly; 4) maintain a safe and stable housing environment for the children by getting their own housing, provide the department with copies of the lease agreement, and show that they can maintain the needed level of care and cleanliness; 5) Frank must attend and complete an anger management course and demonstrate appropriate coping skills and anger management; 6) provide samples for analysis by a drug testing company; 7) Brandy must complete a mental health assessment; and 8) attend and actively participate in a visitation schedule with F.F., M.N., I.N., and G.N.

Olagbami testified that Frank and Brandy initially were interested in participating in the services, but eventually stopped showing progress and they were not attending meetings or responding to phone calls. Olagbami said that Frank and Brandy "haphazardly" completed parenting classes taking eleven months to complete a seven week course. She further testified that Frank has not demonstrated an ability to control his anger. Frank and Brandy were discharged from two counselors for missing appointments.

At the time of trial, Frank and Brandy were both unemployed. Brandy was receiving unemployment income, but that was temporary. At the time of trial, they had lived in their own apartment for approximately three months. Olagbami testified that they did not complete the service plan requirement to maintain stable housing because they were inconsistent in their rent payments. Olagbami testified that Frank and Brandy did not complete all of the service plan.

There was further testimony that Frank and Brandy were in danger of losing the apartment and that they planned to move in with Frank's parents if they were unable to stay in the apartment. Frank testified that their expenses exceeded their income and that they did not have the money to care for the children at the present time.

**Standard of Review**

Only one predicate act under section 161.001(1) is necessary to support a judgment of termination in addition to the required finding that termination is in the child's best interest. *In re A.V.*, 113 S.W.3d 355, 362 (Tex.2003). In conducting a legal sufficiency review in a parental termination case:

> [A] court should look at all the evidence in the light most favorable to the finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction that its finding was true. To give appropriate deference to the factfinder's conclusion and the role of a court conducting a legal sufficiency review, looking at the evidence in the light most favorable to the judgment means that a reviewing court must assume that the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so. A corollary to this requirement is that a court should disregard all evidence that a reasonable factfinder could have disbelieved or found to be incredible. This does not mean that a court must disregard *all* evidence that does not support the finding. Disregarding undisputed facts that do not support the finding could skew the analysis of whether there is clear and convincing evidence.

*In re J.P.B.*, 180 S.W.3d 570, 573 (Tex.2005) (per curiam) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex.2002)) (emphasis in *J.P.B.*).

In a factual sufficiency review,

> [A] court of appeals must give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing.... [T]he inquiry must be "whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." A court of appeals should consider whether disputed

evidence is such that a reasonable factfinder could not have resolved that disputed evidence in favor of its finding. If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient.

*In re J.F.C.*, 96 S.W.3d 256, 266-67 (Tex.2002) (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex.2002)) (internal footnotes omitted) (alterations added).

We find that the evidence is legally and factually sufficient to support the jury's finding that Frank and Brandy failed to comply with the provisions of the service plan. *See* TEX. FAM. CODE ANN. § 161.001(1)(O) (West Supp. 2012). Having found one predicate act under section 161.001(1), we now will determine whether there is sufficient evidence to support the finding that termination was in the best interest of the children. TEX. FAM. CODE ANN. § 161.001(2) (West Supp. 2012).

The primary factors to consider when evaluating whether termination is in the best interest of the child are the familiar *Holley* factors, which include:

> (1) the desires of the child; (2) the emotional and physical needs of the child now and in the future; (3) the emotional and physical danger to the child now and in the future; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist these individuals to promote the best interest of the child; (6) the plans for the child by these individuals or by the agency seeking custody; (7) the stability of the home or proposed placement; (8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one; and (9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 372 (Tex.1976); *In re T.N.F.*, 205 S.W.3d 625, 632 (Tex. App.—Waco 2006, pet. denied).

**Desires of the Children**

At the time of trial, F.F. was age seven, M.N. was almost six, I.N. was almost three, and G.N. was two. F.F., M.N., and I.N. all expressed a desire to return to their parents. None of the children testified at trial. Evidence that a child loves a parent, enjoys visits, and shows affection is marginally relevant. *In re A.M.*, 385 S.W.3d 74, 82 (Tex. App.—Waco 2012, pet. denied); *In re M.H.*, 319 S.W.3d 137, 150 (Tex. App.—Waco 2010, no pet.). And absent a showing of sufficient maturity, a child's preference is not considered. *In re A.M.*, 385 S.W.3d at 82. There was no showing that the children had sufficient maturity so that their preference should be considered.

**Emotional and Physical Needs of the Children Now and in the Future and the Emotional and Physical Danger to the Children Now and in the Future**

Evidence of past misconduct or neglect can be used to measure a parent's future conduct. *Id.* The evidence shows that Frank and Brandy had a history of failing to provide for the needs of the children. They did not maintain stable housing or employment, and they did not provide adequate medical care to G.N.

**Parental Abilities**

There was evidence that Frank was not receptive to Department services and that he did not interact with the children. Frank and Brandy were both inconsistent in attending parenting classes and counseling. Olagbami testified that they were not motivated individuals. There was evidence that M.N., I.N., and G.N. all required special care for various mental and physical conditions and that Frank and Brandy did not meet the special needs of the children. There was evidence that Brandy interacted

appropriately with the children during supervised visitation and that there was a bond between her and the children. Although Frank and Brandy did complete parenting classes and were attending counseling, evidence of a recent improvement does not absolve a parent of a history of irresponsible choices. *In re A.M.*, 385 S.W.3d at 83.

**Available Programs**

Frank and Brandy were inconsistent in attending parenting classes, and they were discharged from two counselors for missing appointments. Frank and Brandy did not begin attending counseling regularly until a year after the children were removed. Frank and Brandy maintained that they missed medical appointments because they did not have transportation. However, they did not utilize transportation services that were made available to them. They also did not take advantage of offers of assistance to help find employment.

**Plans for the Children and Stability of the Home**

Frank and Brandy obtained their own housing approximately three months prior to trial, but they were inconsistent in making rent payments. Frank and Brandy had another child after the children were removed from their care. The apartment has two bedrooms for their family of seven. They were both unemployed, and relied on Brandy's temporary unemployment income. Frank admitted that their expenses exceeded their income and that they could not provide financially for the children at the time. They had acquired transportation at the time of trial, and they testified that would help them maintain employment as well as making it to medical appointments. If they were unable to maintain rent payments, Frank and Brandy planned to move

back in with his parents. Frank agreed that living with his parents was not in the children's best interest. Frank and Brandy planned on taking the children to all medical appointments and counseling sessions; however, neither Frank nor Brandy has a valid driver's license. They also plan to enroll F.F. and M.N. in a private school near their apartment. The jury, as the finder of fact, was free to reject assertions of future stability. *In re A.M.*, 385 S.W.3d at 83.

**Acts or Omissions and Any Excuses for Them**

Frank and Brandy failed to maintain suitable housing for the children and were both unemployed. The children have special needs for medical treatment and Frank and Brandy did not meet those needs. Frank and Brandy blamed many of their problems on the lack of transportation, but they failed to utilize available services for transportation or to obtain suitable transportation.

Considering all of the evidence in a neutral light, we hold that the evidence is such that jurors could reasonably form a firm belief or conviction that termination was in the best interest of the children. We overrule Frank's issue numbers 1, 3, 6, 8, 11, 13, 16, and 19. Because the evidence is sufficient to support one ground of termination under TEX. FAM. CODE ANN. § 161.001(1) and a finding that termination is in the best interest of the children, we need not address Frank's issue numbers 2, 4, 5, 7, 9, 10, 12, 14, 15, 17, 18, 20, and 21. TEX. R. APP. P. 47.1. We overrule Brandy's issue numbers 3, 4, 9, 10, 15, and 16. Because the evidence is sufficient to support one ground of termination under TEX. FAM. CODE ANN. § 161.001(1) and a finding that termination is in

the best interest of the children, we need not address Brandy's issue numbers 1, 2, 5, 6, 7, 8, 11, 12, 13, 14, 17, and 18.

## Admission of Evidence

Frank raises ten issues on appeal challenging the trial court's decision to admit certain evidence, and Brandy raises two issues challenging the trial court's admission of evidence.[3]

In issue numbers 22, 28, and 29, Frank argues that the trial court erred in denying his motion to strike and/or exclude petitioner's expert witness testimony, reports, and trial documents, and also in allowing the opinion testimony of Ninfa Torres and Dr. Gray. Frank complains that the Department failed to provide the information required by TEX. R. CIV. PRO. 194.2 and that the Department's designated testifying experts should be stricken.

Rule 193.6(a) states that a party who fails to make, amend, or supplement a discovery response in a timely manner may not introduce into evidence the material or information that was not timely disclosed or offer the testimony of a witness who was not timely identified unless there was good cause for the failure to timely make, amend, or supplement the discovery request or if the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or prejudice other parties.

---

[3] In her statement of issues presented, Brandy alleges in issue 19 that the trial court erred in admitting the opinion testimony of Ninfa Torres. In issue 20, she alleges that the trial court erred in admitting documents related to the Texas Medical Transportation program. In the argument section of her brief, Brandy argues in issue 19 that the trial court erred in admitting the documents related to the Texas Medical Transportation Program, and in issue 20 she argues that the trial court erred in admitting the Order of Protection of a Child in an Emergency and Notice of Hearing. We will address the issues as stated and argued in the argument section of her brief.

A finding of good cause or lack of surprise must be supported by the record. TEX. R. CIV. PRO. 193.6(b).

The trial court held a hearing on the motion to strike, and at the hearing, the Department notified the trial court that Frank "has been provided with all of the information in the possession of the Department related to the case." The Department detailed the information given to Frank and the dates the information was provided. The Department further went through each testifying expert to show that there was no surprise to Frank concerning the testimony. The trial court found that there was "good cause for failure to timely make, amend, or supplement the discovery responses and that the failure to timely make, amend, or supplement the discovery response will not unfairly surprise or unfairly prejudice the other parties." The trial court did not abuse its discretion in denying the motion to strike and allowing the testimony of Torres and Dr. Gray. We overrule Frank's issue numbers 22, 28, and 29.

In issue number 23, Frank argues that the trial court erred in admitting the Cook Children's Medical Center records. In issue numbers 25 and 26, he argues that the trial court erred in admitting the MHMR and ECI records related to I.N. and G.N. In issue number 27, he argues that the trial court erred in admitting the records of the Children and Family Institute. Frank argues that the records were not relevant, that they were hearsay, that there was no proper predicate, and that the error affected his constitutional right to be a parent. There was extensive medical testimony admitted without objection that referenced information in the Cook Children's medical records. There was also testimony admitted without objection concerning the services I.N. and

G.N. received from ECI and the Children and Family Institute. Frank has not shown that the trial court erred in admitting the records. Moreover, Frank has not shown that he was harmed by any error in admitting the records. TEX. R. APP. P. 44.1. We overrule Frank's issue numbers 23, 25, 26, and 27.

In his issues presented, Franks asserts in issue number 24 that the trial court erred in admitting the MHMR and ECI business records related to Brandy. Frank does not address this issue in his argument section of the brief, and he offers no argument or authority in support of the issue. Texas Rule of Appellate Procedure 38.1(i) states that, to present an issue for review, a brief must contain appropriate citations to authorities. TEX. R. APP. P. 38.1(i). Because Frank does not cite to any authority and does not provide any argument in support of this issue, we conclude that Frank's issue number 24 is inadequately briefed and presents nothing for review.

In Brandy's issue number 19 and Frank's issue number 31, they both argue that the trial court erred in admitting documents related to the Texas Medical Transportation Program. Petitioner's Exhibit 15 was a printout from the Texas Medical Transportation Program's website. It provided information on using the program for transportation to medical appointments, the pharmacy, and the dentist. Frank and Brandy argue that the document was hearsay. There was testimony from several witnesses admitted without objection describing the services of the Texas Medical Transportation Program and the availability of the program to Frank and Brandy. Any error in admitting the documents is harmless as the evidence is cumulative of other

evidence in the record. *See State v. Central Expressway Sign Associates*, 302 S.W.3d 866, 870 (Tex. 2009). We overrule Brandy's issue number 19 and Frank's issue number 31.

In Brandy's issue number 20 and Frank's issue number 30, they both argue that the trial court erred in admitting the order of protection of a child in an emergency and notice of hearing. They argue that the admission of the order "evades the province of the jury as factfinder," that the standard for entry of the order is different than the standard for termination of parental rights, and that the order was not relevant. The jury heard evidence that the children were removed from their parents and that they were in foster care. The jury was given the proper standard for termination of parental rights. Frank and Brandy cite to no authority that it is error to admit the order. *See* TEX. R. APP. P. 38.1(i). Frank and Brandy have not shown that the trial court abused its discretion in admitting the order. We overrule Brandy's issue number 20 and Frank's issue number 30.

**Conclusion**

We affirm the trial court's judgment.

AL SCOGGINS
Justice

Before Chief Justice Gray,
     Justice Davis, and
     Justice Scoggins
Affirmed
Opinion delivered and filed June 6, 2013
[CV06]