

# In The
# Court of Appeals
# Seventh District of Texas at Amarillo

_____

No. 07-13-00282-CV

_____

IN RE S.P.M., E.A.T. & C.S.T., CHILDREN

On Appeal from the 287th District Court
Bailey County, Texas
Trial Court No. 8411; Honorable Jack Graham, Presiding

January 21, 2014

## MEMORANDUM OPINION

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

This is an accelerated appeal wherein Appellants, Alex and Elizabeth, appeal the trial court's order terminating their parental rights to S.P.M., E.A.T. and C.S.T.[1] Elizabeth asserts (1) the evidence is legally and factually insufficient to terminate her parental rights regarding the children and termination is not in their best interest while

---

[1]To protect the parents' and children's privacy, we refer to Appellants by their first names and other interested parties by their initials. *See* TEX. FAM. CODE ANN. § 109.002(d) (West Supp. 2013). *See also* TEX. R. APP. P. 9.8(b). Throughout the remainder of this memorandum opinion, provisions of the Texas Family Code will be cited as "section ___" and "§ ___."

Alex asserts (2) termination of his parental rights regarding E.A.T. and C.S.T. is not in their best interest.[2]  We affirm.

## BACKGROUND

In September 2007, the children were removed from Alex and Elizabeth's home due to neglectful supervision and domestic violence issues.[3]  The children were placed with relatives.[4]  After an adversary hearing, the trial court found there was sufficient evidence of a continuing danger to the children's physical health or safety and remaining in the home was contrary to their welfare.  Elizabeth and Alex were ordered "to comply with each requirement set out in the Department's original, or any amended, service plan during the pendency of [the] suit."[5]  Both parents demonstrated partial compliance with the service plan in 2007 and 2008.

After relatives requested the children be removed in March 2009, the trial court temporarily returned the children to Elizabeth's home with the Department monitoring

[2]Alex is the father of E.A.T. and C.S.T., but not S.P.M.  S.P.M.'s father's parental rights were also terminated; however, he does not appeal.

[3]The Department's affidavit in support of their removal indicates Elizabeth had previously been instructed not to have contact with Alex due to past investigations of domestic violence in the home. R.A., Elizabeth's child fathered by someone other than Alex, indicated Elizabeth and Alex fought in the home, and, although Elizabeth told Alex to leave, he would not.  R.A. also indicated he was scared of Alex, Alex spanked him and a younger child had bruises.  Elizabeth denied any domestic violence prior to living with Alex when she was moving from women's shelter to shelter with the children.  Alex indicated his contact with Elizabeth was less of a hit and more of a shove, denied any recent domestic violence, stated he was attending AA meetings, and his last drink was the day before the Department's interview. *See In re E.C.R.,* 402 S.W.3d 239, 240-41 (Tex. 2013); *In re R.M.S.*, No. 01-13-00331-CV, 2013 Tex. App. LEXIS 12703, at *7-8 (Tex. App.—Houston Oct. 11, 2013, no pet.) (mem. op.) (collected cases cited therein).

[4]At the time of their removal, S.P.M. was four years old, E.A.T. was one year old, and C.S.T. was less than one year old.

[5]Throughout this opinion, the Department for Family and Protective Services will be referred to as "Department."

the placement. In April, the trial court found that the children were in danger from physical abuse and neglect and/or risk of further physical abuse and neglect from Elizabeth's and Alex's endangering conduct, acts or failures to act and were again removed. Prior to removal, Elizabeth told her caseworker that Alex had hit her and she was taking the children to a safe place. The Department suggested she take the children to her aunt's home or enter Women's Protective Services. She refused and subsequently returned with the children to live with Alex. During the thirty-seven days the children were under monitored return, S.P.M. had thirteen unexcused absences from kindergarten. The children were also unkempt and dirty. C.S.T. had what was originally thought to be diaper rash but turned out to be a yeast infection that required medical treatment, and S.P.M. complained that Alex rubbed jalapenos in her mouth.

In a subsequent *Permanency Hearing Order*, the trial court expressly incorporated the permanency plans for the children and service plans for the parents as findings of the court and made them part of the court's order. The trial court also issued an *Order for Referral to Alternative Dispute Resolution* and noticed trial would commence in October 2009.

Mediation was held resulting in a *Rule 11 Agreement*.[6] In the *Agreement,* the parties agreed the Department would place the children in foster care without terminating Alex's or Elizabeth's parental rights and postpone the upcoming trial. Elizabeth and Alex would serve as possessory conservators of their children with visitation under the Department's direction and they agreed to complete the services

---

[6]Because Alex was incarcerated for a parole violation premised on a domestic violence offense, Alex's attorney represented him during negotiations and signed the *Agreement* on Alex's behalf. Neither parent disputes the terms or authenticity of the *Agreement* or whether the *Agreement* was incorporated into an official court order.

outlined in the *Agreement.* Under the *Agreement*, Elizabeth agreed to complete the

following services:

1. Anger Management – Richard Gatlin – complete by 1/1/2010
2. Individual Counseling – Dr. Hoke – weekly
3. Update psychological – Dr. Basham – by 3/1/2010
4. Parenting as recommended by service provider – at least 12 hours.
5. Demonstrate appropriate parenting skills during supervised visits.
6. Maintain medication for depression. Sign release of information so information can be received from her physician.
7. Attend weekly supervised family visits for one hour consistently.
8. Attend regular drug test as requested.
9. [Elizabeth] will maintain full employment and will provide monthly verification of employment.
10. [Elizabeth] will maintain safe and stable housing adequate to provide for her children.
11. [Elizabeth] will pay court ordered child support.
12. Follow thru w/ any and all recommendations made by service providers and [the Department].
13. [Elizabeth] will participate in women's group thru Dr. Wilson's office. [She] will initiate by 1/1/09, and complete by May 30, 2010.
14. [Elizabeth] will provide, name, #, address, copy of SS card and DL of any person who will be in the children's future. This info will be used to run criminal and CPS history.

Under the *Agreement*, Alex agreed to complete the following services:

1. Parenting
2. Batterer's Intervention and Prevention Program
3. Individual Counseling
4. Anger Management
5. Maintain contact with children; in person or by mail
6. Sobriety
7. Complete any and all applicable services in jail or prison.
8. [Alex] will send verification of any services he completes.
9. Upon release [Alex] will demonstrate an ability to maintain safe and stable home environment, and stable and verifiable employment.
10. Pay court ordered child support.

An *Agreed Final Order in Suit Affecting the Parent-child Relationship* was

entered ordering "that . . . Elizabeth . . . and . . . [Alex] complete services as outlined in

Rule 11 agreement." In accordance with that order the children were placed in foster

4

homes. Prior to, and after, the *Agreement*, the Department advised Elizabeth that she was not to be together with Alex. Although Elizabeth understood she was not to have contact with her husband, she did; all the while telling the Department she was not having any contact. Prior to unification, it was understood that Elizabeth was to become independent and self-supportive so she and the children would not be dependent on Alex for their livelihood and care.

Elizabeth and Alex were also granted supervised visitation. The Department described these subsequent visitations as somewhat chaotic. Elizabeth would sit and watch the children with little or no interaction, and the children would not listen to her. Alex did not attend any visitations. In September 2010, the Department received information Elizabeth was seeing her husband when she represented she was not.

In a second *Agreed Final Order* filed October 7, 2010, the trial court reiterated its earlier order that Elizabeth and Alex "complete services as outlined in [their] Rule 11 agreement."[7] In December 2010, she moved to Uvalde to live with her husband who had been released from incarceration. She ceased attending supervised visitation with her children in Lubbock complaining visitation was not practical due to the necessary commute. Instead, she contacted them once a week by telephone.[8]

In a *Second Amended Petition for Termination in Suit Affecting the Parent-Child Relationship* filed January 17, 2012,[9] the Department alleged Elizabeth and Alex

---

[7]In the trial court's subsequent *Placement Review Order(s)* through 2012, the trial court "ordered that all previous orders issued by this Court shall continue without modification."

[8]Her husband indicated he would listen in on the conversations.

[9]The *Original Petition* was filed November 18, 2010.

5

knowingly placed or knowingly allowed the children to remain in conditions or surroundings which endangered their physical or emotional well-being; engaged in conduct or knowingly placed the children with persons who engaged in conduct that endangered their physical or emotional well-being; failed to support the children in accordance with [Elizabeth's] ability; constructively abandoned the children; and failed to comply with the provisions of a court order specifically establishing the actions necessary for the parents to obtain the children's return.

In April 2012, the children left foster care and were placed with relatives in Uvalde. By year's end, the children returned to foster care. The relatives indicated they no longer wanted to provide long-term placement or be considered for adoption because they could no longer handle C.S.T. and E.A.T. and the children had medical problems.

Following a bench trial held July 30, 2013,[10] the trial court issued an order terminating Elizabeth's and Alex's parental rights because they failed to comply with the terms of their *Rule 11 Agreement* and Alex failed to pay child support. This appeal followed.

## DISCUSSION

Elizabeth contends the evidence is insufficient to show that she violated section 161.001(1)(O) by failing to comply with the terms of her *Agreement.* She and Alex also contend that it is not in the children's best interest for their parental rights to be

---

[10]S.P.M. was now ten years old in the fourth grade, E.A.T. was seven years old in the second grade, and C.S.T. was six years old in the first grade.

terminated.  In support, they assert there have not been any domestic violence issues between them since 2009; they are married and have been employed by the same employer for seven months; their employer provides them with a residence and personal vehicle; they will have the support of family members; and Elizabeth has completed many services offered by the Department.  We first address Elizabeth's assertion that she complied with the *Agreement* and next address whether termination of both parents' parental rights is in the children's best interest.[11]

### I. STANDARD OF REVIEW

The standard of review in parental rights termination proceedings is clear and convincing evidence.  *In re J.F.C.,* 96 S.W.3d 256, 263 (Tex. 2002).  "This heightened standard of review is mandated not only by the Family Code, *see* § 161.001, but also the Due Process Clause of the United States Constitution.  *In re E.N.C.,* 384 S.W.3d 796, 802 (Tex. 2012).  "Just as it is imperative for courts to recognize the constitutional underpinnings of the parent-child relationship, it is also essential that emotional and physical interests of the child not be sacrificed merely to preserve that right."  *In re C.H.,* 89 S.W.3d 17, 26 (Tex. 2002).  *See* § 153.001(a)(2) ("The public policy of this state is to . . . provide a safe, stable, and nonviolent environment for the child.").

The evidence is clear and convincing when the proof is such that it produces in the mind of the trier of fact a firm belief or conviction of the truth of the allegations sought to be established by the State.  *In re C.H.,* 89 S.W.3d at 25.  In addition to a finding that termination is in the child's best interest, a finding of only one ground

---

[11]Alex does not contest whether the Department established a statutory ground for termination of his parental rights.  He only contests whether termination was in the best interest of his children.

alleged under section 161.001(1) is sufficient to support an order of termination. *In re E.N.C.,* 384 S.W.3d at 803; *In re A.V.,* 113 S.W.3d 355, 362 (Tex. 2003). *See* § 161.001(1)-(2).

"The distinction between legal and factual sufficiency when the burden of proof is clear and convincing evidence may be a fine one in some cases, but there is a distinction in how the evidence is reviewed." *In re J.F.C.,* 96 S.W.3d at 266. In a termination case, we review legal sufficiency of the evidence by considering all of the evidence in the light most favorable to the fact finder's determination and will uphold a finding if a reasonable fact finder could have formed a firm belief or conviction that those findings were true. *Id.* To give appropriate deference to the fact finder's conclusions, we must assume that the jury resolved disputed facts in favor of those findings if it could reasonably do so. *Id.* An appellate court should disregard all evidence a reasonable fact finder could have disbelieved or found incredible. *Id.*

When reviewing the factual sufficiency of the evidence in a parental termination case, we view all of the evidence in a neutral light and determine whether a reasonable fact finder could form a firm belief or conviction that a given finding was true. *In re C.H.,* 89 S.W.3d at 18-19. We assume the fact finder resolved disputed facts in favor of its finding if a reasonable fact finder could do so and disregarded evidence that a reasonable jury would have disbelieved or found incredible. *In re J.F.C.,* 96 S.W.3d at 266. Evidence is factually insufficient if, in light of the entire record, the disputed evidence that a reasonable fact finder could not have credited in favor of the finding is so significant that the fact finder could not reasonably have formed a firm belief or conviction in that finding. *Id.*

8

## II. ELIZABETH – SECTION 161.001(1)(O)

In order for a court to terminate parental rights under section 161.001(1)(O), the trial court must find by clear and convincing evidence that the parent "failed to comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the [Department] for not less than nine months as a result of the child's removal from the parent under Chapter 262 for the abuse or neglect of the child." The burden of complying with a court order is on the parent. *In re D.N.,* 405 S.W.3d 863, 878 (Tex. App.—Amarillo 2013, no pet.) (citing *Thompson v. Tex. Dep't of Family & Protective Servs.,* 176 S.W.3d 121, 127 (Tex. App.—Houston [1st Dist.] 2004, pet. denied), *overruled for other reasons, Ruiz v. Tex. Dep't of Family and Protective Servs.,* 212 S.W.3d 804, 813 (Tex. App.—Houston [1st Dist.] 2006, no pet.)).[12]

The Family Code does not excuse a failure to comply in assessing whether a violation of section 161.001(1)(O) has occurred; *In re M.C.G.,* 329 S.W.3d 674, 675-76 (Tex. App.—Houston [14th Dist.] 2010, pet. denied), or provide for substantial compliance with a family services plan. *In re I.G.,* 383 S.W.3d 763, 771 (Tex. App.—Amarillo 2012, no pet.) (collected cases cited therein). "[T]his Court has consistently held that, termination under subsection (O) does not allow for consideration of excuses for noncompliance nor does it consider 'substantial compliance' to be same as completion." *Id. See In re J.S.,* 291 S.W.3d 60, 67 (Tex. App.—Eastland 2009, no pet.)

---

[12]Neither Appellant disputes whether there is a court order specifically establishing the actions necessary for their children's return, the children were in the Department's custody for at least nine months or that the children were removed as a result of abuse or neglect.

(evaluation of whether a parent failed to comply with the provisions of a court-ordered plan "does not encompass an evaluation of a parent's partial achievement of plan requirements"). "Subsection 'O' looks only for a parent's failure to comply with a court order, without reference to quantity of failure or degree of compliance." *In re D.N.,* 405 S.W.3d at 878. [13]

The State's evidence at trial establishes that Elizabeth did not fully comply with the requirement to attend individual counseling (unexplained gap in counseling of at least three months); complete twelve hours of parenting classes (Elizabeth produced certificates for eight hours of classes); attend weekly supervised visits with the children (no visits for an eighteen month period); maintain full-time employment or provide the Department with monthly verification (no verification provided) and maintain medication for depression (discontinued medication five years prior to the bench trial).

Elizabeth testified she met many if not all of the plan's goals and provided excuses why she did not complete other goals. Because the trial court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, we must defer to the trial court's first-hand assessments of the credibility of witnesses and conclude that the trial court's assessments could have informed its view of her

---

[13]A termination finding under subsection (O) cannot be upheld where there is no court order that specifically establishes the actions necessary for the parent to obtain the return of the child. *In re B.L.R.P.,* 269 S.W.3d 707, 709-10 (Tex. App.—Amarillo 2008, no pet.). *See In re D.N.,* 405 S.W.3d at 878 ("[T]he Department must provide some evidence that the service plan with which the parent must comply is incorporated in a court order"); *In re K.F.,* 402 S.W.3d 497, 504 (Tex. App.—Houston [14th Dist.] 2013, pet. denied). Here the parents' *Rule 11 Agreement* was expressly incorporated in two *Agreed Final Orders* requiring the parents to "complete services as outlined in the Rule 11 agreement," and was carried forward in the trial court's subsequent *Placement Review Order(s)* through 2012, i.e., "ordered that all previous orders issued by this Court shall continue without modification."

testimony. *See City of Keller v. Wilson,* 168 S.W.3d 802, 819 (Tex. 2005) (fact finders may choose to believe one witness and disbelieve another).

Despite Elizabeth's achievement of some of the *Agreement's* goals, the evidence clearly establishes that other requirements of the *Agreement* were not achieved. Her inability to attend individual counseling sessions, complete parenting classes, attend weekly supervised visits, provide verification of full-time employment and maintain her medication for depression are significant deficiencies. The trial court's determination that Elizabeth failed to comply with requirements of the *Agreement* is supported by legally and factually sufficient evidence. *See In re E.C.R.,* 402 S.W.3d at 244, 249; *In re J.F.C.,* 96 S.W.3d at 277-29, 285. *See also In re A.T.,* No. 07-13-00166-CV, 2013 Tex. App. LEXIS 12691, at *7-8 (Tex. App.—Amarillo Oct. 10, 2013, no pet.) (mem. op.). Accordingly, that portion of Elizabeth's first issue related to section 161.001(1)(O) is overruled.

### III. ELIZABETH AND ALEX – BEST INTEREST OF THE CHILDREN

Elizabeth and Alex challenge the sufficiency of the evidence supporting the trial court's best interest finding. The trial court is given wide latitude in determining the best interest of a minor child; *Gillespie v. Gillespie*, 644 S.W.2d 449, 451 (Tex. 1982), and, while there is a strong presumption that keeping a child with a parent is in the child's best interest, it is also presumed that prompt and permanent placement of the child in a safe environment is in the child's best interest. *In re D.S.,* 333 S.W.3d 379, 383 (Tex. App.—Amarillo 2011, no pet.).

In conducting the best interest analysis, we evaluate "[t]he best interest of the child, not the parent." *Id.* at 384. We consider, among other evidence, the *Holley* factors which include: (1) the child's desires; (2) the child's present and future emotional and physical needs; (3) any present or future emotional and physical danger to the child; (4) the parental abilities of the individuals seeking custody; (5) the programs available to assist the individuals seeking custody to promote the child's best interest; (6) the plans for the child by the individuals or agency seeking custody; (7) the stability of the home or proposed placement; (8) the parent's acts or omissions which may indicate that the existing parent-child relationship is improper; and (9) any excuse for the parent's acts or omissions. *Holley v. Adams*, 544 S.W.2d 367, 372 (Tex. 1970). These considerations are not exhaustive nor is proof of each a condition precedent to termination of the parent-child relationship. *In re D.S.,* 333 S.W.3d at 383-84 (citing *In re C.H.,* 89 S.W.3d at 27). Other factors not on the list may be considered when appropriate and undisputed evidence of just one factor may be sufficient in a particular case to support a finding that termination is in the child's best interest. *In re C.H.,* 89 S.W.3d at 27.

The evidence supporting the statutory grounds for termination may be used to support a finding that the best interest of the children warrants termination of the parent-child relationship; *id.* at 28; *In re P.E.W.,* 105 S.W.3d 771, 779 (Tex. App.—Amarillo 2003, no pet.), and a best interest analysis may also consider circumstantial evidence, subjective factors, and the totality of circumstances as well as the direct evidence. *In re D.S.,* 333 S.W.3d at 384. In addition, a parent's future conduct may be measured by his

12

or her past conduct in determining whether it is in the child's best interest to terminate parental rights. *Id.*

Of the three children, the Department indicated S.P.M. "desperately" wants to be adopted but would still like to see her mother. *See In re A.M.,* 385 S.W.3d 74, 82 (Tex. App.—Waco 2012, pet. denied) (evidence that a child enjoys visits with parent is marginally relevant). There was no evidence of E.A.T.'s and C.S.T.'s desires for placement. Factor one slightly weighs in favor of termination.

The children's present and future emotional and physical needs will be better met if they remain in foster care. All three children are currently receiving weekly individual counseling. E.A.T. and C.S.T. suffer from ADHD and are receiving medication. E.A.T. has been diagnosed with post-traumatic stress syndrome and receives therapy three times weekly. All children have passed their current grade and will be moving up a grade in school next year. The Department also indicates there is a high possibility the children will be adopted, and there are homes seeking to adopt—pending the outcome of the termination proceedings.

Alex and Elizabeth indicate they have been working the past seven months on a ranch. Elizabeth works part-time making $302 bi-weekly while Alex works full-time making $1400 per month.[14] The children would live in a three bedroom trailer provided by the parents' employer. The parents would live in one bedroom, Elizabeth's mother would live in another and the three children would share a single bedroom. They do not have medical insurance and did not indicate how they plan to take care of the children's

---

[14]Alex also indicates he pays $800 per month child support—possibly for other children he has fathered.

counseling and other medical needs. The children's school is forty-five miles away and they would either catch a bus at the ranch's front gate or Elizabeth's mother would drive them to school. Given the parents' poor performance in the past regarding school attendance and their lack of any plan to meet the children's emotional or medical needs, we find factor two weighs in favor of termination.

The parents lack any plan to stem the children's exposure to possible mental and/or physical danger. Alex has completed no services related to anger management or domestic violence under the *Agreement*; Elizabeth has a history of discounting or denying domestic violence in the home; and, after working services for more than a year, the children were returned to both parents in 2009 only to be removed approximately a month later for domestic violence issues. In addition, when the children were removed in 2009, S.P.M. had an inordinate amount of absences from kindergarten, C.S.T. had a yeast infection that required medical treatment and S.P.M. complained that Alex rubbed jalapenos in her mouth. Since 2009, Alex has had no physical contact with the children and Elizabeth missed her supervised visitation for fifteen months due to the inconvenient commute.

So long as Alex remains a part of the household while exhibiting a complete lack of willingness to alter his violent behavior, Elizabeth discounts or denies domestic violence was, or is, a problem in their relationship and she is dependent on Alex for living space and support, there is a substantial present and future emotional/physical danger to the children if they are placed with their parents. The Department, on the other hand, has a viable plan to have the children placed in homes where their emotional, educational and medical needs will be met. Further, because of Elizabeth's

14

poor performance during the thirty-seven days she had to assure S.P.M. attended kindergarten in 2009, we lack confidence Elizabeth will assure her children will regularly attend school forty-five miles away from the ranch. In addition, while programs may be available to assist Alex and Elizabeth with parenting the children, Alex's lack of interest in performing services and Elizabeth's spotty performance provide little assurance they will fully participate in any available services. Thus, factors three, four, five and six also weigh in favor of termination.

Because the children have had four different foster placements and two family placements since 2007, the stability of their placement weighs heavily in our analysis. The children have been in their current placement since December 2012. They are doing well in school, receiving counseling and having their medical needs met. Their current foster family wants to adopt the children but is awaiting conclusion of these proceedings. The Department's caseworkers and supervisor are unanimous in their recommendation that the children remain placed with their foster family. They believe Elizabeth continually puts the children at risk due to her dependency on Alex and lack of internalization of what has been taught in the services she has attended. The Department's current supervisor, who has been a part of the case since the children's initial removal in 2007, indicates Elizabeth has had other relationships where she reported violence, missed face-to-face visits with her children for fifteen months due to an inconvenient commute and has not attended services since she moved to Uvalde in December 2010. After her move, Elizabeth oftentimes responded with hostility when the Department contacted her. Alex was also incarcerated twice during the proceedings and Elizabeth was convicted of filing a false police report. The latest recommendation

by Dr. Wilbanks, who saw Elizabeth for individual counseling, indicates she did not participate in group sessions, blamed the Department for the children's removal, and failed to submit a final report or internalize anything she learned.

The evidence showed Alex and Elizabeth have a history of neglecting and endangering the children, of exposing them to domestic violence, and of unstable housing, employment and relationships. Elizabeth's future plans are to include Alex in their future lives—a father who has shown no interest in working services and is the source of the domestic violence in the household. True, while Elizabeth and Alex have obtained employment that allows them to have a home and transportation, "evidence of a recent improvement does not absolve a parent of a history of irresponsible choices." *In re A.M.,* 385 S.W.3d at 83 ("The need for permanence is a paramount consideration for a child's present and future physical emotional needs."). Factor seven weighs in favor of termination.

The goal of establishing a stable, permanent home for a child is a compelling state interest. *Dupree v. Tex. Dep't of Protective and Regulatory Servs.,* 907 S.W.2d 81, 87 (Tex. App.—Dallas 1995, no writ). While we acknowledge there was a conflict in the testimony regarding the frequency with which domestic violence occurred in the home and there was some testimony that would have allowed the trial court to conclude that Alex no longer abused Elizabeth, it is within the province of the fact finder to resolve conflicts in the evidence. *In re I.G.,* 383 S.W.3d at 774. The failure of Elizabeth and Alex to comply with important provisions of their *Agreement* gives rise to a reasonable inference that they may not have the parental abilities to put the best interest of their children first. *In re J.N.,* 301 S.W.3d 429, 434 (Tex. App.—Amarillo 2010, pet. denied).

16

While there are programs available to assist them in promoting the children's best interest, their failure to comply with the trial court's order and avail themselves of such programs renders the availability of such programs less significant. *Id.* Given the lengthy duration of these proceedings, the children's parents have failed to show they have been stable enough parents for any prolonged period or that the pattern of domestic violence would be discontinued. Given their past performance, the trial court, as fact finder, was free to reject their assertions of future stability and having learned from their mistakes. *See In re A.M.,* 385 S.W.3d at 83. Based on this evidence, the trial court was entitled to determine that permanency could only be achieved through termination and adoption. Factors eight and nine also weigh in favor of termination.

Considering all the evidence in relation to the best interest factors in a light most favorable to the trial court's finding, we conclude a reasonable trier of fact could have formed a firm belief or conviction that termination was in the children's best interest. Moreover, viewing all the evidence in a neutral light, we conclude that the disputed and undisputed evidence favoring and disfavoring the finding permits a reasonable finder of fact to form a firm belief or conviction that termination is in the children's best interest. Accordingly, the evidence supporting the court's finding that termination of the father's and mother's parental rights was in the children's best interest is legally and factually sufficient. The second half of Elizabeth's first issue and Alex's second issue are overruled.

**CONCLUSION**

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice
