**In The**
*Court of Appeals*
*Ninth District of Texas at Beaumont*
**NO. 09-22-00062-CV**
**IN THE INTEREST OF G.A.B.**

**On Appeal from the 88th District Court**
**Hardin County, Texas**
**Trial Cause No. 62066**

**MEMORANDUM OPINION**

Father appealed from an order terminating his parental rights to his daughter, Gabrielle.[1] In his appeal, Father argues that the evidence presented to the trial court was legally and factually insufficient to support the trial court's findings terminating his parental relationship with Gabrielle, including the trial court's best interest finding.[2] Based on our review of the record and Father's arguments, we conclude

---

[1] We use a pseudonym for the name of the minor and her family members to protect the minor's identity. Tex. R. App. P. 9.8(b)(2) (allowing courts to protect the identities of minors in parental-rights termination cases).

[2] The trial court terminated Father's rights on three predicate grounds, including condition endangerment and conduct endangerment. *See* Tex. Fam. Code

that the record contains sufficient evidence to support the trial court's findings as to endangerment and the child's best interest; for these reasons, we will affirm.

## I. Background

### A. Pre-Removal Investigation and Initiation of Suit

In January of 2021, when Gabrielle was one year old, the Department of Family and Protective Services ("the Department") received a report alleging neglectful supervision, medical neglect, and possible sexual abuse. Pursuant to that report, Department investigators visited the home that Mother and Father shared. Although they soon ruled out allegations of sexual abuse, they noted that Mother's behavior was "irrational and bizarre[,]" and that Father often contradicted himself while speaking with the investigators. Because of the way that the parents presented themselves during the interview and based upon their history of criminal convictions for possession of a controlled substance and intoxicated behavior, when both Mother and Father tested positive for methamphetamines, the Department sought removal and possession of the child. The removal affidavit included information that Father

---

Ann. § 161.001(b)(1)(D) and (E). The trial court further found that Father had constructively abandoned Gabrielle when she had been in the permanent or temporary managing conservatorship of the Department of Family and Protective Services for not less than six months, and the Department had made reasonable efforts to return Gabrielle to Father, Father had not regularly visited or maintained significant contact with Gabrielle, and Father had demonstrated an inability to provide Gabrielle with a safe environment. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N). The trial court also terminated the parental rights of Gabrielle's mother, but the mother is not a party to this appeal.

2

was on parole for possession of a controlled substance, and that Mother was on probation for a similar offense.

## B. Evidence at Trial

### 1. Linda Jones' Testimony

Linda Jones, the Department caseworker in this matter, testified that as of the date of her testimony, Gabrielle was doing well in her foster home, and her health had improved. She further noted that it was in Gabrielle's best interest to remain in her foster care setting, as no appropriate relative was available to assume her care.

Jones testified that Mother had not regularly visited Gabrielle, and that Father had been incarcerated during the time that Jones had been assigned to this case.

### 2. Carla Hadnot's Testimony

Carla Hadnot, the Department supervisor on this case, echoed Jones' testimony that Gabrielle was doing well in her foster care placement and opined that she should remain there.

Because Gabrielle has a congenital heart condition, the Department placed her in a primary medical needs home. Hadnot elaborated on the situation and indicated that Gabrielle was receiving appropriate therapy and medication, and that her medical status had improved significantly since she came into care.

Hadnot noted that neither parent had complied with their service plan. With specific reference to Father, Hadnot stated that although he had been incarcerated

since April of 2021, roughly a month after his service plan was incorporated into a court order, it was not unfair to seek to terminate Father's parental rights on the basis of noncompliance with the service plan because Father failed to initiate any services between the date of the child's removal and the date he was incarcerated. She acknowledged that it was impossible for Father to have complied with the service plan while he was in jail but contended he could have begun to comply with it, even though funding for some of the plan's requirements had not then been approved. She also recalled that two of Father's eight drug tests were positive.

Hadnot testified that Mother had missed several of her scheduled visits with Gabrielle and had not complied with her plan of service. Moreover, five of Mother's ten drug tests yielded positive results.

### 3. Foster Mother's Testimony

R.S., Gabrielle's foster mother, testified that Gabrielle was placed in her home in February of 2021, and has been doing very well since that time. Due to Gabrielle's delicate medical condition, she requires an extensive regimen of medication and therapy; she also sees a cardiologist, has had two heart surgeries, and will need a third surgery when she is a bit older.

Being a registered nurse, R.S. was able to not only understand Gabrielle's condition, but to appreciate its severity and the concomitant necessity to ensure that Gabrielle receive appropriate and consistent medical treatment. She repeated the

4

cardiologist's opinion that Gabrielle's dramatic improvement was due to her receiving her medication on a regular basis following her removal from Mother's and Father's care.

### 4. Father's Testimony

Father participated remotely from the Hardin County jail, where he was then incarcerated on a domestic violence charge, for which he pleaded guilty for having assaulted Mother, to whom he has been married since Gabrielle was approximately three months old. Father acknowledged that he was aware of his plan of service, and that he failed to comply with it due to his incarceration but stated that he wanted the opportunity to complete those services, because he loves Gabrielle and wants to be there for her. Once he is released from jail, he hopes to obtain housing and a job, so that he can again be a father to her. After Father was charged with assaulting Mother, a warrant was issued for his arrest for violation of his parole. He has been incarcerated since April 29, 2021. The next time he "came into contact" with Orange County law enforcement, he was arrested on the blue warrant. At the time of trial, Father was still waiting to hear the parole board's decision either to allow his conditional release again or to revoke his parole and continue to keep him incarcerated on his previous felony convictions for possession of controlled substances.

Father testified that he had remained sober during the pendency of the case but conceded that he and Mother used ecstasy on New Year's Eve while Gabrielle was in their care, and he said that "slip-up" caused a positive drug test. Father was aware of Gabrielle's medical needs and stated that while they lived in the same residence, he and Mother "took very good care of" Gabrielle and ensured that she adhered to her medication schedule. He promised that despite his previous parenting mistakes, he would be a good father if permitted to do so.

### 5. Mother's Testimony

Like Father, Mother confirmed knowledge of her plan of service. She stated that despite the difficulties caused by her illness, she has tried to comply with her service plan and has evidence of compliance with some of the tasks in the plan; the record of the trial does not, however, include this documentation. She indicated that she never missed a required drug test, and a positive drug test was a false positive. She testified that after Gabrielle was removed, she lost her place to live and has been living with various friends off and on. She also lost her car. She has been unemployed since the beginning of Covid. She had been drawing unemployment benefits but those had terminated by the time of trial. She planned to use her income tax refund of $4600 to obtain suitable housing and transportation and planned to return to work at a local restaurant in order to properly care for Gabrielle. In the effort to care for her daughter, Mother testified that she not only took her daughter

6

to doctors' appointments and gave her medication as needed but also, she says she has trained at home to become a "cardiological nurse," and she says she is now qualified to provide that level of care to a heart patient, including Gabrielle. That said, Mother said she had not attended any schools for her training. She begged the trial court not to terminate her rights and testified that she had addressed her mental health issues, to be a better mother to Gabrielle.

### 6. Bonnie Hollier's Testimony

Because of concerns of Mother's possible mental incapacity, the trial court appointed Hollier as Mother's guardian ad litem. Based on her limited contact with Mother, Hollier doubted Mother's understanding of the seriousness of the pending case, although Mother did appear to have an understanding of the requirements of her plan of service.

## II. Standard of Review

The decision to terminate parental rights must be supported by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001(b). Under the Family Code, "'[c]lear and convincing evidence' means the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007; *In re J.L.*, 163 S.W.3d 79, 84 (Tex. 2005). The movant must show that the parent committed one or more

predicate acts or omissions and that termination is in the child's best interest. See Tex. Fam. Code Ann. § 161.001(b)(1), (2); *In re J.L.*, 163 S.W.3d at 84.

In reviewing the legal sufficiency of the evidence in a parental rights termination case, we must consider all the evidence in the light most favorable to the finding to determine whether a reasonable factfinder could have formed a firm belief or conviction that the finding was true. *In re J.O.A.*, 283 S.W.3d 336, 344-45 (Tex. 2009) (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)). We assume the factfinder resolved disputed facts in favor of its finding if a reasonable factfinder could do so, and we disregard all evidence that a reasonable factfinder could have disbelieved. *Id*. In a factual sufficiency review, we "give due consideration to evidence that the factfinder could reasonably have found to be clear and convincing." *In re J.F.C.*, 96 S.W.3d at 266. We must determine "'whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations.'" *Id*. (quoting *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). "If, in light of the entire record, the disputed evidence that a reasonable factfinder could not have credited in favor of the finding is so significant that a factfinder could not reasonably have formed a firm belief or conviction, then the evidence is factually insufficient." *Id*.

## III. Analysis

## A. Statutory Grounds D and E

In his first two issues, Father challenges the sufficiency of the evidence to support termination of his parental rights under sections 161.001(b)(1)(D) and (E) of the Texas Family Code. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(D) and (E). As to these subsections, Father relies on the apparent lack of direct evidence that either his conduct or Gabrielle's living environment endangered Gabrielle in any way and relies on *In re L.C.L.* to support his argument that the Department must prove such a causal nexus when seeking a parental rights termination. 599 S.W.3d 79, 84-85 (Tex. App.—Houston [14th Dist.] 2020, pet denied).

In his fourth point of error, Father contends that the evidence was legally and factually insufficient to support the trial court's finding that it was in Gabrielle's best interest to terminate his parental rights; Father attacks the conclusory nature of the testimony at trial, noting that conclusory statements do not constitute evidence and implying that the conclusory testimony of the caseworkers therefore could not support the trial court's termination order.

We are required to consider the sufficiency of the evidence pursuant to Sections 161.001(b)(1)(D) or (E) if challenged. *See In re N.G.*, 577 S.W.3d 230, 235-36 (Tex. 2019). If the evidence is sufficient as to one of these, it will not be necessary to address the other predicate grounds because sufficient evidence as to

only one ground in addition to the best interest finding is all that is necessary to affirm a termination judgment. *See id*. at 232-33. Because the evidence of statutory grounds D and E is often interrelated, we may consolidate our review of the evidence supporting these grounds. *See In re J.L.V*., No. 09-19-00316-CV, 2020 WL 1161098, at *10 (Tex. App.—Beaumont Mar. 11, 2020, pet. denied) (mem. op.). Endangerment arises when a parent's conduct jeopardizes the child's emotional or physical health or exposes a child to loss or injury. *See In re S.R*., 452 S.W.3d 351, 360 (Tex. App.—Houston [14th Dist.] 2014, pet. denied).

Under subsection D, parental rights may be terminated if clear and convincing evidence supports the conclusion that the parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child[.]" Tex. Fam. Code Ann. § 161.001(b)(1)(D). Subsection E allows for termination of parental rights if clear and convincing evidence supports the conclusion that the parent "engaged in conduct or knowingly placed the child with persons who engaged in conduct which endangers the physical or emotional well-being of the child[.]" *Id*. § 161.001(b)(1)(E). "Conduct" includes the parent's failure to act. *See In re T.A*., No. 12-20-00276-CV, 2021 WL 2182316, at *4 (Tex. App.—Tyler May 28, 2021, pet. denied) (mem. op.).

Under subsection D, parental rights may be terminated based on a single act or omission by the parent. *In re L.E.S.*, 471 S.W.3d 915, 925 (Tex. App.—Texarkana

10

2015, no pet.) (citing *In re A.B.*, 125 S.W.3d 769, 776 (Tex. App.—Texarkana 2003, pet. denied)). Under that subsection, we examine the time before the child's removal to determine whether the environment of the home posed a danger to the child's physical or emotional well-being. *Id*. at 925 (citing *In re L.C.,* 145 S.W.3d 790, 795 (Tex. App.—Texarkana 2004, no pet.)). "A finding of endangerment under subsection E, however, may be based on conduct both before and after removal." *In re A.L.H.*, 515 S.W.3d 60, 93 (Tex. App.—Houston [14th Dist.] 2017, pet. denied) (citing *In re S.R.*, 452 S.W.3d at 360). "'[E]ndanger' means to expose to loss or injury[.]'" *In re N.S.G.,* 235 S.W.3d 358, 367 (Tex. App.—Texarkana 2007, no pet.) (quoting *Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987)). Under subsection E, it is sufficient that the child's well-being is jeopardized or exposed to loss or injury. *Boyd*, 727 S.W.2d at 533; *In re N.S.G.*, 235 S.W.3d at 367. "'A child is endangered when the environment creates a potential for danger that the parent is aware of, but disregards.'" *In re L.E.S.*, 471 S.W.3d at 925 (quoting *In re N.B.*, No. 06-12-00007- CV, 2012 WL 1605457, at *9 (Tex. App.—Texarkana May 8, 2012, no pet.) (mem. op.)). Generally, subjecting a child to a life of uncertainty and instability endangers the child's physical and emotional well-being. *See In re R.W.*, 129 S.W.3d 732, 739 (Tex. App.—Fort Worth 2004, pet. denied).

In addition, a pattern of drug abuse will support a finding of conduct endangering a child even if there is no evidence that such drug use caused a physical

11

or actual injury to the child. *Vasquez v. Tex. Dep't of Protective & Regulatory Servs.*, 190 S.W.3d 189, 196 (Tex. App.—Houston [1st Dist.] 2005, pet. denied). A history of illegal drug use is conduct that subjects a child to a life that is uncertain and unstable, endangering the child's physical and emotional well-being. *See In re S.D.*, 980 S.W.2d 758, 763 (Tex. App.—San Antonio 1998, pet. denied); *Dupree v. Tex. Dep't of Protective & Regulatory Servs.*, 907 S.W.2d 81, 85-86 (Tex. App.—Dallas 1995, no writ). A parent's drug use, criminal history, and employment and housing instability prior to and during the case create a course of conduct from which the factfinder could determine the parent endangered the child's emotional and physical well-being. *See In re M.C.*, No. 09-18-00436-CV, 2019 WL 1561824, at \*6 (Tex. App.—Beaumont Apr. 11, 2019, no pet.) (mem. op.); *see also In re S.R.*, 452 S.W.3d at 361-62 (parent's drug use may qualify as a voluntary, deliberate, and conscious course of conduct endangering the child's well-being); *Walker v. Tex. Dep't of Family & Protective Servs.*, 312 S.W.3d 608, 617 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) (illegal drug use may support termination under subsection E because "it exposes the child to the possibility that the parent may be impaired or imprisoned[ ]").

The trial court, sitting without a jury, heard evidence of Father's drug use, criminal history, unemployment, and housing instability, both before removal and during the pendency of the case. Much of this evidence came from Father, himself,

12

in that he testified that he used ecstasy, an illegal drug, while Gabrielle was in his care, that he had been convicted of two felony drug offenses, that he pleaded guilty to family violence toward Mother during the pendency of this case, and that he had neither a job nor a home to go to upon his release from jail. Father was incarcerated prior to the child's birth and afterwards and remained incarcerated at the time of trial, awaiting the parole board's decision to revoke his conditional release. Even his parents refused to assist him with a suitable place to live until after he could show them a steady course of employment, creating a reasonable inference that Father has had previous problems maintaining steady employment. The record supports a finding that Gabrielle was endangered by the uncertainty and instability caused by Father. *See In re M.C.,* 2019 WL 1561824, at *5-6. Although Father testified he had reformed, relatively recent improvements in his lifestyle do not necessarily negate his criminal history, drug use, lack of steady employment, and violent behavior toward Mother. *See In re J.F.-G.,* 627 S.W.3d 304, 316-17 (Tex. 2021). His promise that he would, if given the chance, care for Gabrielle after his release from incarceration, while undoubtedly well intentioned, likewise provides no assurance of Gabrielle's future well-being, and the trial court therefore need not have determined that his good intentions weighed in Father's favor, especially given the evidence tending to show that based on Father's past behavior Gabrielle had been neglected and endangered while in Father's care. *See In re A.M.,* 385 S.W.3d 74, 83

13

(Tex. App.—Waco 2012, pet. denied) (stating that a trier of fact may reject a parent's promises of future stability).

Although both Father and Mother testified that they took excellent care of Gabrielle, the evidence indicates otherwise. The evidence reveals that Gabrielle made significant medical strides after being removed and placed with her foster family. The cardiologist opined that Gabrielle's impressive improvement after removal from Mother and Father was at least partially due to receiving her medication on a regular basis. This evidence supports an inference that Gabrielle was not correctly medicated while in Mother's and Father's care. Failure to administer medication or medical care to a child with a heart defect qualifies as endangerment. *See In re J.I.G.,* No. 01-18-00023-CV, 2018 WL 3233874, at *8 (Tex. App.—Houston [1st Dist.] July 3, 2018, no pet.) (mem. op.) (stating that failure to provide appropriate medical care constitutes endangering conduct for purposes of subsection E).

Father's contention that the evidence is insufficient to show endangerment because of the alleged lack of evidence causally connecting his bad conduct toward the child misstates the law; endangering conduct need not be directed at the child in question, nor need the child sustain any injury, for the evidence to warrant the conclusion that the child has been endangered, as that term is used in the context of a parental rights termination. *In re J.F.-G.*, 627 S.W.3d at 312 (citing *Boyd*, 727

14

S.W.2d at 533). The specific danger to the child's well-being may be inferred from parental misconduct standing alone. *Boyd*, 727 S.W.2d at 533. Father's reliance on *In re L.C.L.* likely is misplaced, because even though the Texas Supreme Court denied the petition for review, Justice Lehrmann's concurring opinion implies that if presented with a "proper case," the court probably would decide that no causal nexus between the drug use and the alleged endangerment would be necessary to find clear and convincing evidence of endangerment. 599 S.W.3d at 84; 629 S.W.3d 909, 911 (Tex. 2021). Even if we were to assume, which we do not, that the law requires a cause-and-effect relationship between the allegedly endangering conduct and harm to the child, the evidence that Father failed to ensure that Gabrielle was properly medicated and allowed Gabrielle to remain in an environment of illegal drug abuse by himself, Mother, and others, and as a result of this neglect, the harm she suffered constituted the evidence of endangerment that Father contends is absent from the record. *See In re J.I.G.,* 2018 WL 3233874, at *8.

We have carefully reviewed the entire record, and after examining the evidence we hold that a reasonable trier of fact could have formed a firm belief or conviction that Father engaged in conduct whereby Gabrielle's physical or emotional well-being was endangered by the parents' conduct and by her living conditions while in their care. Accordingly, we overrule Father's first and second issues.

15

## B. Best Interest Finding

In his last issue, Father challenges the legal and factual sufficiency of the evidence to support the trial court's determination that terminating his parental rights was in Gabrielle's best interest. Father has attacked the best interest finding on the ground that the only evidence of Gabrielle's best interest consisted of a conclusory statement, which amounts to no more than a scintilla of evidence. *See In re L.C.L.,* 599 S.W.3d at 85. While it is a correct statement of the law that conclusory statements are not evidence, Hadnot's conclusory testimony that it was in Gabrielle's best interest to remain with her foster family does not end the inquiry. As the reviewing court, the question we must decide is whether the record, when considered as a whole, supports the trial court's best interest finding. *See In re C.H.*, 89 S.W.3d at 28. To make this determination, we consider the non-exclusive factors identified by the Texas Supreme Court in *Holley v. Adams,* to the extent that they apply to the case before us. 544 S.W.2d 367, 371-72 (Tex. 1976).[3]

---

[3] These factors are as follows:

1. the child's desires;
2. the child's current and future physical and emotional needs;
3. the current and future physical and emotional danger to the child;
4. the parenting abilities of the parties seeking custody;
5. the programs available to assist the party seeking custody;
6. the plans for the child by the parties seeking custody;
7. the stability of the home or proposed placement;
8. the parent's acts or omissions that reveal that the existing parent-child relationship is improper; and

There need not be evidence of all, or even most, of the *Holley* factors; instead, strong evidence of one factor, particularly a factor involving the child's safety, may be adequate to justify the trial court's decision that the child's best interest is served by terminating the parent-child relationship. *See In re C.H.*, 89 S.W.3d at 27-28. Applying this standard to the instant case indicates that the trial court was justified in forming the requisite firm conviction that termination was in Gabrielle's best interest, for Hadnot's brief statement about Gabrielle's best interest was far from the only evidence that her best interest would be best served by terminating Father's parental relationship. As shown above, the record contained evidence that not only was Gabrielle's physical safety endangered by Father's neglect of his daughter's medical needs, the parenting abilities of Gabrielle's foster mother, as illustrated by Gabrielle's remarkable improvement after she was removed from Mother's care and placed with her foster mother weigh heavily in favor of termination. Given the gravity of Gabrielle's medical state, it clearly was in her best interest that both Father's and Mother's parental rights be terminated, so that Gabrielle could be adopted by the foster family that had demonstrated the ability to care for her properly.

---

9. any excuse for the parent's acts or omissions.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976).

17

Neither Mother nor Father had a realistic plan for providing a stable home for Gabrielle. During the pendency of the suit, despite the gravity of the situation, Mother had been living with various friends, had not been employed, and had no transportation at time of trial. Mother's plan was dependent upon receiving an IRS refund to, at most temporarily, obtain a place to live and some form of transportation. Father's plan was wholly contingent upon him being released from incarceration. In that case, he planned to be housed in a halfway house and "hoped" to go to work for a previous employer; only after proving a consistent history of stable employment, he would rely upon his elderly parents to provide him with suitable housing. On the other hand, the foster parent wished to adopt Gabrielle, and maintained a stable home life and employment, where Gabrielle was reportedly happy and loved. This factor weighs heavily in favor of termination of Father's parental rights.

As Father has correctly noted in support of his position, there is a strong presumption that keeping a child with a parent is in the child's best interest. Tex. Fam. Code Ann. § 153.131(b); *see also In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006) (noting that a "strong presumption" exists favoring keeping a child with his or her parent). Even so, it is also presumed "the prompt and permanent placement of the child in a safe environment is . . . in the child's best interest." Tex. Fam. Code Ann. § 263.307(a). To reconcile these seemingly contradictory principles, the trial court is afforded "wide latitude in determining the best interests of a minor child."

18

*Gillespie v. Gillespie,* 644 S.W.2d 449, 451 (Tex. 1982) (citing *Leithold v. Plass,* 413 S.W.2d 698 (Tex. 1967)). The trial court exercised this latitude in favor of termination, and we decline to disturb it absent any indication to show that that decision was erroneous or reached improperly. Considering the *Holley* factors, and considering all the evidence, we find that the trial court could have reasonably formed a firm belief or conviction that termination of Father's parental rights was in the best interest of Gabrielle. We overrule Father's final issue.

Having found the evidence supports the trial court's findings made pursuant to Tex. Fam. Code Ann. § 161.001(b)(1)(D) and (E), and the trial court's best-interest finding, we need not address Father's additional contention that the evidence was insufficient to support the finding that he had constructively abandoned his child. *See* Tex. Fam. Code Ann. § 161.001(b)(1)(N); Tex. R. App. P. 47.1.

We affirm the trial court's order of termination in trial court cause number 62066.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on August 15, 2022
Opinion Delivered August 18, 2022

Before Kreger, Horton and Johnson, JJ.