# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00443-CV

E. F.-B., Appellant

v.

Texas Department of Family and Protective Services, Appellee

### FROM THE 146TH DISTRICT COURT OF BELL COUNTY
### NO. 21DFAM325523, THE HONORABLE DALLAS SIMS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

E.F.-B. (Father) appeals from the trial court's decree terminating his parental rights to his infant son (Infant), who was almost one year old at the time of trial.[1]  *See* Tex. Fam. Code § 161.001(b).  Father challenges the legal and factual sufficiency of the evidence supporting termination under subsections (E), (N), (O), and (Q) and supporting that termination is in Infant's best interest.[2]  We affirm the trial court's termination decree.

## BACKGROUND

Infant was born on June 7, 2021.  The Texas Department of Family and Protective Services (Department) received an intake for neglectful supervision by Mother on the same day,

---

[1]  For the Infant's privacy, we will refer to him by an alias and to his family members by their relationships to him or by aliases.  *See* Tex. R. App. P. 9.8.

[2]  Mother is not part of this appeal.

which alleged that Mother may have been homeless, received little to no prenatal care, and tested positive for THC and amphetamines at admission to give birth to Infant. The Department on June 17, 2021, filed its original petition seeking temporary managing conservatorship of Infant and the termination of Mother's and Father's parental rights. The trial court appointed the Department as temporary managing conservator, and Infant was placed with his maternal aunt, where he remained until the final hearing.

At the time of the original intake and throughout the remainder of the underlying termination proceeding, Father was incarcerated on charges of assault of a pregnant person, stemming from a January 2021 altercation with Mother. At the time, Mother told the responding police officer that Father hit her, and after she attempted to protect herself and her unborn child from the blows, Father then "started hitting her on the back of the legs with a closed fist and a plastic bottle." Mother reported that she "was afraid that [Father] would kill her and [Infant]," and that Father had assaulted her before. Father was arrested, incarcerated, and ultimately entered a plea deal for a five-year sentence. Father's sentence runs through 2026, although he is eligible for parole in December 2023 (i.e., 19 months after trial).

The final bench trial on the merits occurred on May 5, 2022. Julissa Rivas, the conservatorship worker assigned to the matter, testified that Infant had been placed with his maternal aunt since he was discharged from the hospital after his birth. She testified that the maternal aunt wanted to keep Infant, "is capable of adopting him," and wished to adopt him. She testified that neither parent has shown they were able to provide Infant with a safe, suitable, and appropriate environment. She also described Infant's current placement and stated that Infant "is always smiling. He's starting to crawl now. He gets along with his sister. Overall, [the maternal

2

aunt is] a good placement." Rivas also clarified that Infant's half-sibling was previously adopted by the same maternal aunt.

Rivas testified that Infant had never met Father and that Mother had last seen Infant virtually in December.[3] Rivas testified she was aware of Father's criminal history and because of that history she had concerns about his ability to parent at all or ever in the future. Rivas testified that she was aware Father had been charged and incarcerated for assault of a pregnant person, aggravated robbery, evading arrest, and tampering with physical evidence. Rivas testified that placing Infant with a person when they are evading arrest or trying to tamper with or destroy evidence would put the Infant in danger if Infant were exposed to such behaviors. Rivas also testified that Father's sentence would extend more than two years from the date of trial. Rivas testified that neither parent can provide the necessary guidance to Infant and neither would be an appropriate person to make medical decisions or be around the child if they are not taking drug tests. On cross-examination, Rivas testified that Father had sent her multiple letters and that he wanted to be the father to Infant. Rivas stated that Father has not denied any of the wrongdoing in his past, and that he has sent papers indicating he was attending anger management classes. Rivas concluded that her opinion is that "[t]he best interest is for [Infant] to be adopted by his maternal aunt," and she had no doubt in her mind that termination of the parents' rights is in the best interest of the child.[4]

---

[3] Rivas testified that the Department gave Mother a service plan but she was unable to complete it; in particular, Rivas testified that Mother had tested positive for methamphetamine "on several occasions," that Mother had not taken any drug tests since November 2021, and that Mother had not seen Infant since she ceased taking drug tests because drug testing was a pre-condition for visiting Infant.

[4] Mother also testified that her sister "is a great caregiver" and Infant's half-sibling "is in a great placement" with the maternal aunt.

Father testified that Infant is his biological child. Father stated that he took responsibility for beating up Mother in January 2021 and that he entered a plea deal for the assault of a pregnant person charge. Father stated that he first saw a picture of Infant "three or four months after [Infant] was born" and that the experience was "[v]ery life changing" and "turned my life completely around." Father testified that he has been incarcerated the whole life of Infant but he was "currently enrolled in anger management classes and also awaiting a drug program. I'm waiting for a bed to open in the NCC Drug Program." He stated that he goes to church every weekend, stays out of trouble, and associates with "a bunch of Bible toters."

Father testified that he is currently serving a five-year sentence and is up for parole in December 2023. He stated that he would do whatever to qualify for parole, and that he will have "a very different life" once he is released. Father also admitted that he was previously denied parole and admitted that the parole board had "decided [he was] not a good risk for society." Father testified that his mother, who is currently in New Jersey, would relocate to Texas to help with Infant. Father stated that he loves Infant and does not want his rights terminated. Father testified that he has "no problem at the moment with [Infant] being where he's at" but that he does not want to relinquish his rights.

Father conceded on cross-examination that he was previously charged with aggravated robbery and was sentenced to seven years in prison after violating probation. Father also conceded that he was charged with evading arrest and tampering with physical evidence in 2017, for which he was sentenced to five years in prison. Father testified that after he was released, he assaulted Mother while she was pregnant in January 2021. Father admitted that Mother was visibly pregnant when he assaulted her and that he has "made bad decisions in [his] life" but stated that he is "trying to turn [his] life around." Father also testified that he was aware

4

he would be looking at twenty-five years to life if he committed a third felony while on parole under the Texas habitual felony offender statute. Father also clarified that his "bad decisions"—the aggravated robbery, tampering, and evading arrest—were all from before Infant's birth.

At the end of the hearing, the trial court found by clear and convincing evidence that Mother's and Father's parental rights should be terminated. The trial court found that clear and convincing evidence supported termination under the predicate statutory grounds of subsections (D), (E), (N), (O), and (Q), and that termination of Father's parental rights is in the best interest of Infant. The trial court thereafter named the Department the permanent managing conservator and continued the placement of Infant with his maternal aunt. The trial court signed the final Decree of Termination on June 23, 2022, and this appeal followed.

## STANDARD OF REVIEW

To terminate the parent-child relationship, a court must find by clear and convincing evidence that: (1) the parent has committed one of the enumerated statutory grounds for termination and (2) it is in the child's best interest to terminate the parent's rights. Tex. Fam. Code § 161.001(b). Clear and convincing evidence is "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." *Id*. § 101.007.

"The distinction between legal and factual sufficiency lies in the extent to which disputed evidence contrary to a finding may be considered." *In re A.C.*, 560 S.W.3d 624, 630 (Tex. 2018). When determining legal sufficiency, we consider whether "a reasonable factfinder could form a firm belief or conviction that the finding was true" when the evidence is viewed in the light most favorable to the factfinder's determination and undisputed contrary evidence is

5

considered. *Id*. at 631. When determining factual sufficiency, we consider whether "in light of the entire record, the disputed evidence a reasonable factfinder could not have credited in favor of a finding is so significant that the factfinder could not have formed a firm belief or conviction that the finding was true." *Id*. We must "provide due deference to the decisions of the factfinder, who, having full opportunity to observe witness testimony first-hand, is the sole arbiter when assessing the credibility and demeanor of witnesses." *In re A.B.*, 437 S.W.3d 498, 503 (Tex. 2014); *see also In re J.P.B.*, 180 S.W.3d 570, 573 (Tex. 2005).

## DISCUSSION

Father challenges that there was legally and factually sufficient evidence supporting termination under subsections (E), (N), (O), and (Q). *See* Tex. Fam. Code § 161.001(b)(1)(E) (endangering conduct), (N) (constructive abandonment), (O) (failure to comply with court order establishing actions necessary for return of child in Department conservatorship), (Q) (criminal conduct). However, Father concedes that sufficient evidence supports termination under subsection (D).[5] *See id.* § 161.001(b)(1)(D) (authorizing termination upon finding of clear and convincing evidence that parent "knowingly placed or knowingly allowed the child to remain in conditions or surroundings which endanger the physical or emotional well-being of the child"). We therefore need not address the other predicate statutory grounds, including subsection (E), because there is sufficient evidence supporting the trial court's termination under subsection (D). *See In re N.G.*, 577 S.W.3d 230, 232 (Tex. 2019) (per curiam) (explaining that appellate court may affirm termination judgment by upholding one

---

[5] In his briefing on appeal, Father does not challenge the sufficiency of the evidence supporting termination under subsection (D). In fact, he concedes that "[t]he only ground the Department could prove was paragraph D" and that "[t]he evidence was neither legally nor factually sufficient to support any ground for termination other than paragraph D."

6

termination ground under section 161.001(b)(1)); *see also C.W. v. Texas Dep't of Fam. & Protective Servs.*, No. 03-19-00654-CV, 2020 WL 828673, at \*2 (Tex. App.—Austin Feb. 20, 2020, no pet.) (mem. op.) (citing *In re K.M.*, Nos. 01-19-00285-CV, 01-19-00286-CV, 2019 WL 3949483, at \*8 (Tex. App.—Houston [1st Dist.] Aug. 22, 2019, pet. denied) (mem. op.)) (declining to review sufficiency of evidence under subsection (D) because appellant did not challenge subsection (E) finding that separately triggers collateral consequences under subsection (M)); Tex. R. App. P. 47.1.

We turn to Father's remaining issue, challenging that there was legally and factually sufficient evidence supporting the best interest finding. "[T]here is a strong presumption that the best interest of a child is served by keeping the child with a parent." *In re R.R.*, 209 S.W.3d 112, 116 (Tex. 2006). "And because of the strong presumption in favor of maintaining the parent-child relationship and the due process implications of terminating a parent's rights to [a] minor child without clear and convincing evidence, the best interest standard does not permit termination merely because a child might be better off living elsewhere." *S.B. v. Texas Dep't of Fam. & Protective Servs.*, 654 S.W.3d 246 (Tex. App.–Austin 2022, pet. Filed) (quotation marks omitted) (quoting *In re D.L.W.W.*, 617 S.W.3d 64, 81 (Tex. App.—Houston [1st Dist.] 2020, no pet.)). "In parental-termination proceedings, [the Department's] burden is not simply to prove that a parent should not have custody of [the] child; [the Department] must meet the heightened burden to prove, by clear and convincing evidence, that the parent should no longer have any relationship with the child whatsoever." *Id*. (quoting *In re D.L.W.W.*, 617 S.W.3d at 81).

That parental presumption disappears, however, when sufficient evidence is presented to the contrary. We consider the factors set forth in *Holley v. Adams* to evaluate best

interest: (1) the child's wishes, (2) the child's emotional and physical needs now and in the future, (3) any emotional or physical danger to the child now and in the future, (4) the parenting abilities of any parties seeking access to the child, (5) programs available to help those parties, (6) plans for the child, (7) the stability of any proposed placement, (8) any evidence that the parent-child relationship is improper, and (9) any excuses for the parent's conduct. 544 S.W.2d 367, 371–72 (Tex. 1976); *see also A.C.*, 560 S.W.3d at 631; *S.B.*, 2022 WL 4242538, at *4. The party seeking termination has the burden of establishing that termination is in the child's best interest. *See In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002). The set of factors is not exhaustive; although one factor is not necessarily dispositive, in some instances evidence of a single factor may suffice to support the best-interest finding. *See Holley*, 544 S.W.2d at 371–72; *see also In re C.H.*, 89 S.W.3d 17, 27 (Tex. 2002); *S.B.*, 2022 WL 4242538, at *4. Ultimately, the *Holley* test focuses on the child's best interest, not the parent's. *In re C.L.C.*, 119 S.W.3d 382, 399 (Tex. App.—Tyler 2003, no pet.).

Father has been incarcerated for Infant's entire life and has never met Infant. The evidence in the record demonstrates that Father was previously convicted and incarcerated for first-degree-felony aggravated robbery, third-degree-felony evading arrest, and third-degree-felony tampering with physical evidence, and that Father was arrested and charged with evading arrest and tampering with evidence arising from a traffic stop that occurred while Father was released on community supervision for the aggravated robbery charge. *See J.G. v. Texas Dep't of Fam. & Protective Servs.*, 592 S.W.3d 515, 525 (Tex. App.—Austin 2019, no pet.) ("[A] trier of fact may measure a parent's future conduct by his past conduct and determine whether termination of parental rights is in the child's best interest." (quoting *In re B.R.*, 456 S.W.3d 612, 616 (Tex. App.—San Antonio 2015, no pet.))). After being released, Father then assaulted

8

Mother in January 2021 while she was visibly pregnant with Infant, and Mother reported at the time that she was afraid Father "would kill her and [Infant]" and that Father had previously assaulted her. *See In re C.A.J.*, 122 S.W.3d 888, 893 (Tex. App.—Fort Worth 2003, no pet.) (explaining that "a parent's inability to provide adequate care for the child, lack of parenting skills, poor judgment, and repeated instances of immoral conduct may also be considered when looking at best interest"). Father was thereafter convicted of third-degree-felony assault of a pregnant person and sentenced to five years of imprisonment. *See S.B.*, 2022 WL 4242538, at *4 (stating stability and permanence are the "paramount considerations" for the child's emotional and physical needs and any emotional or physical risks to child now and in future). Father is not scheduled for release until 2026; has been denied parole once already; and would not be eligible for parole again until December 2023, approximately nineteen months after trial. Moreover, Father would be subject to the Texas habitual felony offender statute if he is convicted of another felony after release. *See J.G.*, 592 S.W.3d at 525 ("Father's multiple periods of incarceration raise the possibility that he will continue to engage in criminal activity and risk imprisonment in the future.").

Infant has spent his entire life in the care of his maternal aunt, who previously adopted Infant's half-sibling and wants to adopt Infant. *See In re J.M.T.*, 519 S.W.3d 258, 270 (Tex. App.—Houston [1st Dist.] 2017, pet. denied) (affirming determination and concluding that "young age [of the subject child] does weigh in favor of the best-interest determination"). Rivas testified that Infant's placement with his maternal aunt was a "good placement" and that Infant is "always smiling" and "gets along with his" half-sibling. *See In re C.C.*, No. 05-20-01056-CV, 2021 WL 1573062, at *6 (Tex. App.—Dallas Apr. 22, 2021, pet. denied) (mem. op.) (stating that factfinder may infer child's wishes from other evidence presented at the hearing). In contrast,

Rivas testified that Father has not "shown that [he is] able to provide [Infant] with a safe, suitable and appropriate environment." *See id.*

Father contends that seeing a picture of Infant was "[v]ery life changing. I turned my life completely around." He testified that he plans to have "a very different life" when he is released; that he is taking anger management, drug treatment, and vocational courses; goes to church every weekend; and his mother is willing to relocate to help him with Infant. "However, a trial court is not bound to accept the truth or accuracy of a parent's testimony, either as to past actions or future intentions." *In re D.M.*, 452 S.W.3d 462, 472 (Tex. App.—San Antonio 2014, no pet.). Furthermore, "[e]vidence of a recent improvement does not absolve a parent of a history of irresponsible choices." *In re A.M.*, 385 S.W.3d 74, 83 (Tex. App.—Waco 2012, pet. denied).

Father also accepts responsibility for his past actions and contends that his decision to not excuse "my actions but to accept what I've done" weighs against termination. Even if we treat Father's commendable acceptance of responsibility as weighing the final factor against the best interest determination, the other factors overwhelmingly support the best interest finding by the trial court. *See Holley*, 544 S.W.2d at 371–72.

Reviewing the record under the appropriate standards of review and considering the relevant factors, we conclude that legally and factually sufficient evidence supports the trial court's finding that termination was in the best interest of Infant. We overrule Father's remaining issue.

10

**CONCLUSION**

We affirm the trial court's final decree terminating Father's parental rights to Infant.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Smith

Affirmed

Filed: December 7, 2022

11